ERISE IP, P.A.
Eric A. Buresh (*pro hac vice pending*)
eric.buresh@eriseip.com
Michelle L. Marriott (*pro hac vice pending*)
michelle.marriott@eriseip.com
Chris R. Schmidt (CSB 298761)
chris.schmidt@eriseip.com
Nick R. Apel (*pro hac vice pending*)
nick.apel@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

Phillip J. Haack (CSB 262060)
phaack@martonribera.com
MARTON RIBERA SCHUMANN &
CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel: (415) 360-2511

*Attorneys for Defendant
Krisp Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SANAS.AI INC.,<br><br>        Plaintiff,<br><br>   vs.<br><br>KRISP TECHNOLOGIES, INC.,<br><br>        Defendant. | Case No.:  3:25-cv-05666-RS<br><br>**DEFENDANT'S MOTION TO DISMISS**<br><br>**HEARING**<br><br>**DATE: OCTOBER 30, 2025<br>TIME: 1:30 PM<br>COURTROOM: 3, 17 FLOOR<br>JUDGE: HONORABLE CHIEF<br>DISTRICT JUDGE RICHARD<br>SEEBORG**<br><br>**DEMAND FOR JURY TRIAL** |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Civil Procedure 12(b)(6) Defendant Krisp Technologies, Inc. ("Defendant" or "Krisp") moves to dismiss the following Counts in Plaintiff Sanas.AI Inc.'s ("Plaintiff" or "Sanas") Complaint (Dkt. 10): <u>Count Five</u> for Declaratory Judgment of Co-Inventorship and Co-Ownership over U.S. Patent Nos. 12,205,609 and 12,223,979; <u>Count Six</u> for Misappropriation of Trade Secrets under Defend Trade Secrets Act; and <u>Count Seven</u> for Misappropriation of Trade Secrets under California Uniform Trade Secrets Act. A hearing for this Motion is set on Thursday October 30, 2025 at 1:30 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Chief District Judge Richard Seeborg for the Northern District of California located at Courtroom 3, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Franscisco, California. This motion is based upon this Notice, the supporting memorandum of points and authorities, all pleadings and papers on file in this action, and other matters as may be properly presented to the Court.

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION** ............................................................................................... 1

II.    **FACTUAL BACKGROUND** ............................................................................ 2

III.   **LEGAL STANDARD** ...................................................................................... 4

IV.   **THE COURT SHOULD DISMISS SANAS' TRADE SECRET CLAIMS** ................. 5

    A.    SANAS HAS NOT AND CANNOT PLEAD REASONABLE SECRECY MEASURES WHERE SANAS DID NOT SHARE ANY INFORMATION PROTECTED BY THE GOVERNING NDA .. 5

    B.    SANAS' ALLEGED CATEGORIES OF INFORMATION ARE NOT TRADE SECRETS ............. 7

          1.    Sanas discloses its alleged trade secrets in its own patents attached to the Complaint. ……………………………………………………...…..8

          2.    Sanas' alleged categories of information are not protectable as trade secrets …………………………………………………...……….9

               a) Categories describing software functionality and performance are not protectable. …………………………………………..………...……9

               b) Categories describing vague conceptual notions are not protectable…11

    C.    SANAS FAILS TO PLEAD ECONOMIC VALUE ................................................ 13

V.    **THE COURT SHOULD DISMISS SANAS' CO-INVENTORSHIP AND CO-OWNERSHIP CLAIMS** ................................................................................ 14

    A.    SANAS CANNOT PLEAD A MORE-THAN-INSIGNIFICANT CONTRIBUTION TO CONCEPTION ................................................................................................ 14

          1.    Discussing Well-Known Concepts in the Art is Not Joint Inventorship ..14

          2.    Discussing Concepts That Are Not Part Of The Patented Invention Is Not Joint Inventorship ……………………………………………………15

VI.   **CONCLUSION** ............................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*, No. CV1810187CJCADSX, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) ............................................................. 13

*Agency Solutions.Com, LLC v. TriZetto Grp.*, Inc., 819 F. Supp. 2d 1001, 1016–19 (E.D. Cal. 2011) ................................................................................................................................. 10

*Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020) ......................... 4

*Amalfitano v. Google Inc.*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) ........................................................................................................................... 7, 13, 16

*Antaris Technologies Inc. v. Matthews*, No. 25-cv-04048-RS, 2025 WL 1939868, at *5–6 (N.D. Cal. July 15, 2025) ……………………………………………………………..…….........12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................. 4

*Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000) ........................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................. 4

*Carr v. AutoNation, Inc.*, 798 F. App'x 129, 130 (9th Cir. 2020) ................................................ 1

*Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004) ......................... 14

*Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2019 WL 917056, at *3 (N.D. Cal. Feb. 25, 2019) ........................................................................................................................... 4

*Convolve, Inc. v. Compaq Computer Corp.*, 527 F. App'x 910, 925 (Fed. Cir. 2013).................. 6

*Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.*, No. 22-cv-07148-AMO, 2024 WL 1199018, at *4 (N.D. Cal. March 20, 2024) ................................................................................................. 5

*Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018).......... 5

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) ............................................................................................... 11

*Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504975, at *6 (N.D. Cal. Sept. 9, 2020) ..................................................................................................................................... 5

*Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 561 (N.D. Cal. 1999)................................ 6

*Gentil v. Wingfield GmbH*, No. 20-CV-05358-EMC, 2021 WL 4979427, at *6 (N.D. Cal. Mar. 2, 2021) ........................................................................................................................................ 9

*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ........................................ 8

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ........................................................... 4

*Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1006 (Fed. Cir. 2019) ................................ 14

*Navigation Holdings LLC v. Molavi*, No. 19-CV-02644-LHK, 2020 WL 5074307, at *2 (N.D. Cal. Aug. 25, 2020) ..................................................................................................................... 15

*Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756, 766 (N.D. Cal. 2024) ............................................ 5

*RoadRunner Recycling, Inc. v. Recycle Track Sys.*, Inc., No. C 23-04804 WHA, 2023 WL 8936690, at *2 (N.D. Cal. Dec. 26, 2023) ................................................................................... 4

*Shum v. Intel Corp.*, 633 F.3d 1067, 1083 (Fed. Cir. 2010) ....................................................... 15

*Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4–5 (N.D. Cal. June 14, 2012) .......................................................................................................................... 9

*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) .......................................................................................................................................... 11

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ....................................... 4

*Swanson v. Alza Corp.*, No. C 12-4579 PJH, 2015 WL 1304436, at *11 (N.D. Cal. Mar. 20, 2015). .......................................................................................................................................... 14

*Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5, n.3 (N.D. Cal. Apr. 13, 2015) ........................................................................................................... 9

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) ........................................................................................................................... 5

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). ................................................................................................................................... 11

## Statutes

18 U.S.C. § 1839(3)(B) .............................................................................................................. 13

Cal. Civ. Code § 3426.1(d)(1)………………………………………………………...….13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  __INTRODUCTION__

While it is correct that Krisp and Sanas engaged in discussions to assess whether the two businesses could complement each other in the marketplace, the accuracy of Sanas' version of events ends there. Sanas did not provide Krisp with even a single piece of information that was protected under the parties' sole agreement governing trade secret obligations—a non-disclosure agreement ("NDA"). **Ex. A**, NDA. Nor did the parties discuss any technology that wasn't already publicly available. The discussions proceeded only far enough for Krisp to realize that Sanas did not have a quality accent conversion technology to contribute to a partnership. Krisp then proceeded to complete development of its own industry-acclaimed accent conversion technology. Furthermore, Sanas did not contribute anything to Krisp's development work or to Krisp's patented inventions. A review of Sanas' allegations in the Complaint, and the documents relied on, demonstrates Sanas' claims for trade secret misappropriation and co-inventorship of two of Krisp's patents are factually unsupported, baseless, and without merit.

Regarding the trade secret claims, dismissal with prejudice is warranted because Sanas did not share any secret or confidential information with Krisp. This is evident in two ways. First, Sanas did not take even minimal steps to protect any shared information under the parties' NDA. The NDA between the parties, relied on in the Complaint, outlined the steps to protect any exchanged confidential information, including providing notice of any shared information believed to be confidential. Sanas undertook not even one of those steps because it never shared any confidential information with Krisp. Sanas has no trade secret claim, fundamentally, because it did not share any secrets. "Trade secret law is a two-way street: It protects ideas, but it also requires giving notice that the information is in fact a secret[.]" *Carr v. AutoNation, Inc.*, 798 F. App'x 129, 130 (9th Cir. 2020). Not only did Sanas give no notice of any purported secrets, but the categories of information Sanas now alleges are trade secrets were already publicly known concepts, including in Sanas' own patents it attaches to the Complaint. Put simply, the information Sanas shared with Krisp was not secret, and Sanas did not treat it as such. Sanas' trade secret claims should be dismissed at the outset.

Sanas' co-inventorship claim fails for the same basic reason, i.e., Sanas did not contribute anything to Krisp's inventive development work. If the Court assumes Sanas' allegations that the parties discussed concepts like teacher-student learning models and parallel data processing with the goal of assessing technological alignment are true despite a complete lack of evidence (as it must on a Rule 12(b)(6) motion), these concepts were already well-known in the voice productivity space. Sanas did not become a joint inventor in Krisp's patented technology by discussing broad concepts that were already well-known in the space. Sanas' co-inventorship claim is also baseless and should be dismissed at the outset.

## II.     FACTUAL BACKGROUND

Sanas' Complaint[1] presents a touching story about the founding of Sanas. Dkt. 10, at ¶¶ 15–23. A few college students heard their friend had trouble being understood because of his accent and wanted to use a generic technology, artificial intelligence ("AI"), to help their friend. *Id.* at ¶¶ 15–23. They tried to partner with a successful company that already had a meaningful footprint in the voice productivity space, Krisp, to accelerate their business growth. *Id.* at ¶¶ 24–54. But Krisp, who was already well into developing its own accent conversion technology, soon realized Sanas did not have a product that could meet Krisp's exacting quality standards, and so Krisp decided to complete its own technology rather than partner with Sanas. *Id.* at ¶¶ 55–63. Facing competition from Krisp's superior quality product, Sanas turned to litigation. *See generally* Dkt. 10.

While Sanas' Complaint attempts to claim trade secret misappropriation under federal and California law, there are giant holes in the story. *See generally* Dkt. 10. The Complaint references an NDA the Parties entered at the beginning of discussions, but Sanas failed to provide the actual

---

[1] Krisp notes that Plaintiff filed the Complaint originally (Dkt. 1) and then subsequently filed a "Complaint *Correction of Docket*" (Dkt. 10) removing "False Advertising" from the title. Krisp understands this to be the only correction and that the Complaint filed at Dkt. 10 is otherwise identical to the original complaint filed at Dkt. 1 (i.e., there were no amendments or supplementations).

NDA. *See generally* Dkt. 10. This is not surprising. The NDA, provided with this Motion and which the Court may consider for purposes of this Motion, sinks Sanas' claims. **Ex. A**. The parties contemplated that, during discussions, there *might* be an exchange of "Confidential Information." **Ex. A**, at §§ 2–4. "Confidential Information" under the NDA is: (i) written information that is "marked 'Confidential,' 'Proprietary' or in some other manner to indicate its confidential nature;" or (ii) oral information that is "reduced to a written summary [] that is marked in a manner to indicate its confidential nature[.]" **Ex. A**, at § 2.A. Sanas does not even allege that it took any steps to protect anything as "Confidential Information" under the NDA. This is dispositive of Sanas' trade secret claims. And Sanas' actions (or inaction) are not surprising because the same information that Sanas alleges as "trade secrets" in its Complaint are public information, including by public disclosure in Sanas' own patents, Dkts. 10-1, 10-2, 10-3, 10-4; **Ex. B**, Sanas' Alleged Trade Secrets Disclosed in Sanas' Patents. In short, there were no "trade secrets" shared much less misappropriated.

The Complaint goes on to allege that two of *Krisp's* patents, U.S. Patent Nos. 12,205,609 and 12,223,979 (the "'609 and '979 Patents"), should name *Sanas'* employees as inventors because it was allegedly Sanas' employees who invented key aspects of Krisp's patented inventions. Dkt. 10, at ¶ 142–49. But these wild allegations fail to survive minimal scrutiny. Sanas alleges that "Sanas employees, including Maxim Serebryakov, disclosed to Krisp that Sanas' accent translation software was being developed based upon a teacher-student architecture; Sanas' product runs locally on a personal computer CPU; and Sanas' product uses a parallel speech data processing model." *Id.* at ¶ 143. And Sanas alleges that "[i]ndependent claims 1, 13, and 19 of the '609 patent include the limitations of a 'teacher machine learning (ML) model;' 'parallel speech data;' and 'a student machine learning algorithm.' The claims of the '979 Patent likewise encompass these concepts." *Id.* at ¶ 144. Tellingly, there is no evidence (or pled facts) to corroborate Sanas' conclusory allegations. But even so, discussing the use of a teacher-student model and parallel speech processing in the context of speech processing is akin to discussing the use of a steering wheel and tires in the context of an automobile—they are generic, standard, and well-known. For

1
2
3
4
5
6

purposes of the Court's consideration in the context of this Motion, the Court may take judicial notice of the fact that the Patent Office plainly identified these concepts as well-known when determining that Krisp's inventions were patentable. **Ex. C**, '609 Patent's Notice of Allowance. Discussing known concepts is not an act of invention. Krisp's team members put in the hard work to develop technology far superior to the previously known state of the art, and they are the sole inventors of Krisp's patented inventions.

7

### III.   <u>LEGAL STANDARD</u>

8
9
10
11
12
13
14
15
16
17

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In determining a motion to dismiss, "[t]he court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* "In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

18
19
20
21
22
23
24
25
26
27

<u>Trade Secrets</u>. "District courts analyze DTSA and CUTSA's pleading requirements together." *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020). "[T]o succeed on a claim for trade-secret misappropriation under the DTSA and CUTSA, a plaintiff must show that it possessed a trade secret, that a defendant misappropriated the trade secret, and that misappropriation caused or threatened damage to the plaintiff." *RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc.*, No. C 23-04804 WHA, 2023 WL 8936690, at *2 (N.D. Cal. Dec. 26, 2023) (internal citations omitted). "Both the DTSA and the CUTSA define a trade secret as information that (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner." *Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2019 WL 917056, at *3 (N.D. Cal. Feb. 25, 2019). "To survive a motion to dismiss,

28

'[t]he trade secret must be described "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.""" *Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504975, at *6 (N.D. Cal. Sept. 9, 2020) (internal citations omitted).

<u>Inventorship</u>. "The inventors named in an issued patent are presumed correct[.]" *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) To plead a correction of inventorship claim for nonjoinder, a plaintiff must allege facts from which a court can infer: (1) the plaintiff "made a more-than-insignificant contribution to the conception of at least one claim[;]" and (2) "there was some element of joint behavior[.]" *Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.*, No. 22-cv-07148-AMO, 2024 WL 1199018, at *4 (N.D. Cal. March 20, 2024).

## IV.    THE COURT SHOULD DISMISS SANAS' TRADE SECRET CLAIMS

The Court should dismiss Sanas' trade secret claims because Sanas cannot plead reasonable secrecy measures, the alleged categories of information are not trade secrets, and Sanas pleads no independent economic value.

### A.    Sanas has not and cannot plead reasonable secrecy measures where Sanas did not share any information protected by the governing NDA.

As a preliminary matter, the Parties' NDA is incorporated by reference into the Complaint because it is referenced extensively, forms the basis of Sanas' trade secret claims, and its authenticity is not in dispute. Dkt. 10, at ¶¶ 31, 32, 35, 37, 41, 45, 58, 152; *Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756, 766 (N.D. Cal. 2024). "The purpose of the incorporation by reference doctrine is to prevent plaintiffs from surviving a 12(b)(6) motion by deliberately omitting documents in their complaint." *Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018). And importantly, "[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).

To be protected "Confidential Information," Sanas' NDA unambiguously requires: (i) written information to be "marked 'Confidential,' 'Proprietary' or in some other manner to indicate its confidential nature;" or (ii) oral information to be "reduced to a written summary [] that is marked in a manner to indicate its confidential nature[.]" **Ex. A**, at § 2.A. Sanas does not plead compliance with either condition. *See generally* Dkt. 10. Accordingly, any information disclosed by Sanas was not protected. **Ex. A**, at §§ 3–4 (only providing protection for "Confidential Information"); *Convolve, Inc. v. Compaq Computer Corp.*, 527 F. App'x 910, 925 (Fed. Cir. 2013) (finding "the 'circumstances' giving rise to a duty to maintain the secrecy of the disclosed information is dictated by the terms of the NDA" and that by "not follow[ing] the procedures set forth in the NDA to protect the shared information," the defendant's duty to maintain secrecy never arose as to information that was not sent in compliance with the NDA).

Sanas cannot cure this defect because the NDA unambiguously provides that no trade secret obligations exist outside the governing NDA: "Recipient **shall not have any obligation, express or implied by law, with respect to <u>trade secret</u> or proprietary information** of Discloser disclosed under this Agreement **except as set forth herein**." **Ex. A**, at § 14 (emphasis added). Accordingly, no other allegations can plead the existence of reasonable secrecy measures. *See Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 561 (N.D. Cal. 1999) ("Gemisys' attempt to restrict its own employees' access to PMIS is not enough to counter the fact that Gemisys disclosed its allegedly trade secret material to Phoenix and others of its licensees without imposing a duty of confidentiality upon them or their employees."). Here, there can be no reasonable secrecy measures because Sanas did not invoke the protections of the NDA, and the NDA clearly states it provides the only obligations for trade secrets.

This is fatal to Sanas' trade secret claim as a whole. There is no way around the NDA, which is the sole controlling document and makes clear that it is the "entire agreement" between the Parties, that it "supersedes all prior written an oral agreements," cannot be waived "except by a writing executed by the Party against whom the waiver is to be effective," and cannot be modified unless "by a writing signed by the Parties." **Ex. A**, at § 14. Accordingly, Sanas also cannot plead

waiver or modification of the NDA (or any particular provision) in this case absent signed, written confirmation of such. As is the case here, "a written non-disclosure agreement supplants any implied duty of confidentiality that may have existed between the parties." *Convolve*, 527 F. App'x at 923–25 (analyzing CUTSA claims and an NDA under California law, and rejecting an argument that "regardless of whether the confidentiality of the trade secrets was confirmed in writing [] the parties understood their mutual disclosures were confidential, notwithstanding the NDA strictures" because such interpretation was "unreasonable and would render paragraph 7 of the NDA a dead letter."). The Court should dismiss Sanas' trade secret claims with prejudice because any amendment in this case would be futile. *Amalfitano v. Google Inc.*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) (leave to amend need not be granted if amendment would be futile).

**B.      Sanas' alleged categories of information are not trade secrets.**

Notably, Sanas' Complaint provides no evidence of Sanas actually disclosing to Krisp the information alleged to be trade secrets. But even assuming that Sanas' unsupported allegations are true for purposes of this Rule 12(b)(6) motion, it makes sense that Sanas did not protect any information allegedly discussed with Krisp under the NDA because, simply put, none of it would be trade secret-type information. At best, the categories of information Sanas alleges are simply the type of information that would allow Krisp to assess quality and system compatibility.

Sanas' allegations are self-defeating. Sanas identifies the following broad categories of information as purported trade secrets:

- "Real world performance indicators of Sanas' developed accent translation software, including for example:
    - CPU utilization;
    - End-to-end latency on call-center platforms;
    - Performance in noisy environments;
    - Performance of the software using different types of microphones;
    - Performance of the software in strong and no accent cases;
    - Performance with high speaking rates; and
    - Robustness to laughter;

- Challenges with accent translation software that Sanas had identified as areas of focus for the deployment of development resources, including for example relating to:
  - Performance in noisy environments;
  - Performance problems created by certain types of input sounds;
- Whether Sanas preprocesses audio;
- Approaches for evaluating voice quality, acoustic quality, intelligibility, and accentedness of speech;
- Specific algorithm design tradeoffs;
- Sanas' development of a teacher-student architecture;
- That Sanas' product runs locally on a personal computer CPU; and
- Sanas' use of a parallel speech data processing model."

Dkt. 10, at ¶ 51.[2] These categories of information are not trade secrets because: (1) Sanas shared the same information in its own patents; and (2) it is the type of information California courts routinely reject as trade secrets.

### 1. Sanas discloses its alleged trade secrets in its own patents attached to the Complaint.

Sanas' alleged categories of information are not trade secrets because they are disclosed publicly—by Sanas itself—in the asserted patents attached to the Complaint. Attached as Exhibit **B** to this Motion is a chart demonstrating where Sanas' alleged trade secrets are publicly disclosed in Sanas' own patents. **Ex. B** (citing Dkts. 10-1, 10-2, 10-3, 10-4); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ("In reviewing the sufficiency of a complaint, we limit ourselves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.").

"It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000). If the alleged disclosed information is secret, Sanas seems to have missed

---

[2] Krisp assumes Paragraph 51 constitutes Plaintiff's attempt to identify its alleged trade secrets because Paragraph 51 is the only paragraph which lists the alleged "information disclosed." To the extent Sanas contends the identity of its alleged trade secrets lies outside Paragraph 51, such style of hidden pleading fails to permit Krisp "to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

the memo—it didn't protect the information as confidential under the NDA (*supra* **Section A**), and it publicly disclosed the same information in its patents (**Ex. B**). Accordingly, Krisp respectfully requests the Court dismiss Sanas' DTSA and CUTSA claims with prejudice. *Gentil v. Wingfield GmbH*, No. 20-CV-05358-EMC, 2021 WL 4979427, at *6 (N.D. Cal. Mar. 2, 2021) ("Dismissal of the trade secret claim as it relates to the In/Out product is with prejudice because the product was sold to the public and disclosed in a utility patent.").

### 2. Sanas' alleged categories of information are not protectable as trade secrets.

Even if Sanas had treated the allegedly-disclosed information as secret (it did not), it is not the type of information that is protectable under the DTSA and CUTSA.

#### a) Categories describing software functionality and performance are not protectable.

First, Sanas' alleged categories merely purport to describe the "real world" operating functionality and performance of Sanas' software. Again, even this description is self-defeating. Information discernable in the "real world" is not secret. Courts routinely reject this type of high-level, "real world" information as trade secret because such are "evident to anyone running the finished program." *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4–5 (N.D. Cal. June 14, 2012).

For example, the Northern District of California found the following identification of alleged trade secrets insufficient: "'server architecture'—as including 'memory utilization, storage utilization, server synchronization, scalability of all resources (including memory, network bandwidth, storage devices and CPU), operating system type, scripting engine, the number of servers, server functions and the ability and server architecture for multiple users to execute and save game functions in real time[.]" *Soc. Apps*, 2012 WL 2203063, at *4. Similarly, this Court found that the following alleged information insufficient: "the manner in which [a] feature was developed and implemented, the strategy behind it, [and] the operation of this feature[.]" *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5, n.3 (N.D. Cal. Apr. 13, 2015) (granting motion to dismiss).

Additionally, the Eastern District of California found the following types of information insufficient for trade secrets: "conceptual notions that determine how [an] interface or its related programs will work[;]," "[p]lans, flows, inputs, outputs, rules of operation, priorities of operation, and the like[;]" "high level design specifications that are incorporated into software[;]" "insight, knowledge and know-how acquired by an insider to a particular trade[;]" "information that is reflected in the way software functions[;]" and "information that lead[s] to the incorporation of [program] functionality[.]" *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1016–19 (E.D. Cal. 2011). In sum, "descriptions of the design and function features of software are not information within the definition of California's UTSA, even where a particular design or functional element may be unique to that software." *Id.* at 1021.

Here, each of Sana's alleged trade secrets is directed to an unprotectable idea or function: real world performance indicators (e.g., impermissible information evident to anyone running program, server architecture, memory utilization, resource scalability, operation of a feature, and information reflected in the way software operates); challenges identified for software development (e.g., impermissible information regarding the manner in which a feature was developed/strategy behind it, plans, flows, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program); whether Sanas preprocesses audio (e.g., impermissible server architecture, server functions, operation of a feature, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program), approaches for evaluating speech data (e.g., impermissible manner in which a feature was developed/strategy behind it, plans, flows, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program); algorithm design tradeoffs (same); developing a student-teacher architecture (e.g., impermissible server architecture, manner in which a feature was developed/strategy behind it, plans, flows, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program); running on a personal computer (e.g., impermissible information evident to anyone running program, server

architecture, memory utilization, resource scalability, operation of a feature, design specifications incorporated in software, insight/knowledge/know-how, information that is reflected in the way software functions); using parallel data processing (same). *Soc. Apps*, 2012 WL 2203063, at *4–5; *Top Agent*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5; *Agency Solutions.Com*, 819 F. Supp. 2d at 1016–19.

> b) **Categories describing vague conceptual notions are not protectable.**

Second, broad conceptual notions—including generic AI concepts—are routinely rejected as trade secrets.

"[A]llegations that set out 'purported trade secrets in broad, categorical terms' that are merely 'descriptive of the types of information that generally *may* qualify as protectable trade secrets' are insufficient to state a claim." *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) (emphasis in original). Examples of such insufficient descriptions include: "source code, . . . strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of [] software, including ideas and plans for product enhancements" (*Vendavo*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3); "data on the environment [and] data on the propagation of radio signals" (*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)); "product composition" (*Five Star*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7); and "analysis of [a] system" (*Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6). Additionally, generic artificial intelligence (AI) terminology is not trade secret. *RoadRunner*, No. C 23-04804 WHA, 2023 WL 8936690, at *3 ("to the extent RoadRunner alleges that its 'AI system' is a trade secret . . . [such] is inadequate. . . . To hold otherwise would be to allow anyone to throw around terms

like 'AI' and receive trade-secret protection without clarifying what the trade secret even is"). In *Antaris Technologies Inc. v. Matthews*, this Court dismissed CUTSA and DTSA claims because the plaintiff "refer[red] to mere broad categories of information that *potentially* or *generally* may be subject to trade secret protection," such as "[plaintiff's] software architecture, current feature set, [] development pipeline and processes . . . the software feature preferences, [and] business requirements[.]" No. 25-cv-04048-RS, 2025 WL 1939868, at *5–6 (N.D. Cal. July 15, 2025) (granting motion to dismiss).

Each of Sanas' alleged categories can accurately be aligned with these categories that courts reject as trade secrets:  performance indicators of Sanas' software (e.g., impermissible data on the environment/signals, product composition, and analysis of a system); identified challenges for development (e.g., impermissible strategic business development initiatives, negative knowhow learned through the course of research and development, and other information related to the development of software including ideas and plans for product enhancements); and other non-specific aspects of how Sanas' software operates (e.g., impermissible negative knowhow learned through the course of research and development, other information related to the development of software, including ideas and plans for product enhancements, data on the environment/signals, product composition, and analysis of a system). *Vendavo*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3; *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2; *Five Star*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7; *Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6.

And each of Sanas' alleged categories directed to boilerplate AI concepts is further insufficient, for example: preprocessing audio; teacher-student; and parallel data processing models. *RoadRunner*, No. C 23-04804 WHA, 2023 WL 8936690, at *3; *see also* Dkt. 10, at ¶¶ 2,

17, 19, 51 (Plaintiff explaining its core technology is AI and that its "goal was straight forward: to use artificial intelligence to . . . .").

Accordingly, because each alleged category of information fails to constitute a trade secret under California precedent, Krisp respectfully requests the Court dismiss Sanas' DTSA and CUTSA claims with prejudice because Sanas was in the sole—and unique—position to plead whatever information it believed was legally misappropriated, and is not even close to identifying something that theoretically could be a trade secret. This warrants dismissal with prejudice. *Amalfitano v. Google Inc.*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) (leave to amend need not be granted if amendment would be futile).

### C.    Sanas fails to plead economic value.

Finally, Sanas also fails to allege any non-conclusory facts to support that its alleged trade secrets derive independent economic value from not being generally known. 18 U.S.C. § 1839(3)(B); Cal. Civ. Code § 3426.1(d)(1). Sanas' Complaint merely recites the required economic value element of a trade secret in conclusory fashion. Dkt. 10, at ¶¶ 153, 163. Such conclusory pleading is insufficient to survive a motion to dismiss. *Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6 ("CREAM fails to allege any facts . . . demonstrating how the purported trade secrets have independent economic value from being secret. . . . The Court thus finds that CREAM has failed to adequately identify an actionable trade secret."); *Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*, No. CV1810187CJCADSX, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (dismissing trade secret claim where plaintiff did not plead any economic value allegations beyond "invest[ing] time, capital and expertise in developing its trade secrets and other confidential, proprietary business information and in the developments of its bulk of business which is not information generally known to those in the industry."). Accordingly, Krisp also respectfully requests the Court dismiss Sanas' trade secret claims for failing to plead any derived independent value in a non-conclusory manner.

V.    **THE COURT SHOULD DISMISS SANAS' CO-INVENTORSHIP AND CO-OWNERSHIP CLAIMS**

A.    **Sanas cannot plead a more-than-insignificant contribution to conception.**

Sanas loosely alleges that three concepts (allegedly disclosed by Sanas' employees to Krisp) supports naming its employees joint inventors on Krisp's '609 and '979 Patents: (1) that Sanas' "software was being developed based upon a teacher-student architecture;" (2) that Sanas' "product runs locally on a personal computer CPU;" and (3) that Sanas' "product uses a parallel speech data processing model" (the "Alleged Contributions"). Dkt. 10, at ¶ 143. Sanas then alleges that "[t]he '609 and '979 Patents both incorporate these concepts as central features of the claimed inventions therein" because "[i]ndependent claims 1, 13, and 19 of the '609 patent include the limitations of 'teacher machine learning (ML) model;' 'parallel speech data;' and 'a student machine learning algorithm'" and "[t]he claims of the '979 likewise encompass these concepts." *Id.* at ¶ 144.

Once again, there is no evidence cited in the Complaint (or otherwise) to corroborate these allegations. But assuming the truth of the allegations solely for purposes of this Rule 12(b)(6) motion, these three Alleged Contributions do not support a claim of joint inventorship because they were well-known concepts in the art (first and third Alleged Contributions) and are not part of the patented invention (second Alleged Contribution).

1.    **Discussing well-known concepts in the art is not joint inventorship.**

"[A] person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known [in] the current state of the art." *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004). Courts routinely find alleged contributions insufficient where such alleged contributions were already known. *Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1006 (Fed. Cir. 2019); *Swanson v. Alza Corp.*, No. C 12-4579 PJH, 2015 WL 1304436, at *11 (N.D. Cal. Mar. 20, 2015).

Sanas' first and third Alleged Contributions were already well-known. *Caterpillar*, 387 F.3d at 1377. This is demonstrated from the Krisp '609 Patent's Notice of Allowance, which is

properly the subject of judicial notice. **Ex. C**; *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024) ("Courts may [] take judicial notice of documents issued by the PTO, including a patent's prosecution history."); *Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644-LHK, 2020 WL 5074307, at *2 (N.D. Cal. Aug. 25, 2020) ("The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, and it 'may look beyond the plaintiff's complaint to matters of public record without converting the Rule 12(b)(6) motion into a motion for summary judgment[.]") (internal citations omitted).

Specifically, in stating the reasons for patentability of Krisp's '609 Patent, the Examiner expressly described the known art in the field which included "a system for training a ***student model*** for speech recognition ***based on a teach[er] model***" which processed "source domain data 202 and target domain data 206 . . . ***in parallel***" (US 2019/0287515 to Li et al.) and "systems and methods that provide with a new language model for a new location by training a requested ***student language model with data collected from existing teacher language models***" (US 2022/0171929 to Mishra et al.). **Ex. C**, at 6–10. The Examiner found Krisp's claimed inventions patentable based on ***Krisp's*** inventive work over and above what was already known—inventive work in which Sanas played no role whatsoever. *Id.* The inventive concepts that earned Krisp its patents were entirely ***Krisp's ideas***. Sanas' alleged contribution of knowledge everyone already knew is not inventive at all and does not support naming Sanas' employees joint inventors on Krisp's '609 and '979 Patents. *Caterpillar*, 387 F.3d at 1377.

### 2.      Discussing concepts that are not part of the patented invention is not joint inventorship.

It is fundamental that a joint inventor must "contribution to the claimed invention[.]" *Shum v. Intel Corp.*, 633 F.3d 1067, 1083 (Fed. Cir. 2010). Sanas' second Alleged Contribution—that Sanas' "product runs locally on a personal computer CPU"—does not appear in any claim of the '609 or '979 Patent, and Sanas does not allege that it does. *See* Dkt. 10, at ¶¶ 143–44 (alleging "[t]he '609 and '979 Patents both incorporate [the Alleged Contribution] as central features of the claimed inventions therein" because "[i]ndependent claims 1, 13, and 19 of the '609 patent include

the limitations of 'teacher machine learning (ML) model;' 'parallel speech data;' and 'a student machine learning algorithm'" and "[t]he claims of the '979 likewise encompass these concepts"). The '609 and '979 Patents simply do not claim the second Alleged Contribution as an aspect of the claimed invention. **Exs. D–E**, '609 and '979 Patents.[3] Accordingly, the second Alleged Contribution could never render Sanas' employees joint inventors on Krisp's '609 and '979 Patents.

In summary, the Court should dismiss Sanas' claim of co-inventorship (and associated claim of co-ownership) with prejudice. The Court should dismiss such claims with prejudice because the best contributions Sanas could allege (i.e., the Alleged Contributions) are not even in the vicinity of inventive contributions to the claimed inventions of Krisp's '609 and '979 Patents. Therefore, any amendment in this case would be futile. *Amalfitano v. Google Inc.*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) (leave to amend need not be granted if amendment would be futile).

## VI.    **CONCLUSION**

For the foregoing reasons, Krisp respectfully requests the Court dismiss Sanas' trade secret and co-inventorship/co-ownership claims with prejudice.

---

[3] In addition to being the subject of proper judicial notice (*NVIDIA*, 722 F. Supp. 3d at 1049; *Navigation Holdings*, 2020 WL 5074307, at *2) the '609 and '979 Patents are also properly incorporated by reference into the Complaint because they are referenced repeatedly, are the basis of Plaintiff's inventorship claims, and their authenticity is not disputed. *Pirani*, 710 F. Supp. 3d at 766.

September 8, 2025                    Respectfully Submitted,

                                    By: */s/ Chris R. Schmidt*

                                    ERISE IP, P.A.
                                    Eric A. Buresh (*pro hac vice pending*)
                                    eric.buresh@eriseip.com
                                    Michelle L. Marriott (*pro hac vice pending*)
                                    Michelle.marriott@eriseip.com
                                    Chris R. Schmidt (CSB 298761)
                                    chris.schmidt@eriseip.com
                                    Nick Apel (*pro hac vice pending*)
                                    Nick.apel@eriseip.com
                                    7015 College Blvd., Suite 700
                                    Overland Park, KS 66211

                                    *Attorneys for Defendant Krisp Technologies, Inc.*