ERISE IP, P.A.
Eric A. Buresh (*pro hac vice pending*)
eric.buresh@eriseip.com
Michelle L. Marriott (*pro hac vice pending*)
michelle.marriott@eriseip.com
Chris R. Schmidt (CSB 298761)
chris.schmidt@eriseip.com
Nick Apel (*pro hac vice pending*)
nick.apel@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

Phillip J. Haack (CSB 262060)
phaack@martonribera.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel: (415) 360-2511

*Attorneys for Defendant*
*Krisp Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SANAS.AI INC., | ) )  Case No.:  3:25-cv-05666-RS |
| Plaintiff, | ) ) |
| vs. | ) **DEFENDANT'S ANSWER TO** |
|  | ) **PLAINTIFF'S PATENT** |
| KRISP TECHNOLOGIES, INC., | ) **INFRINGEMENT CLAIMS AND** |
|  | ) **COUNTERCLAIMS** |
| Defendant. | ) |
|  | ) **DEMAND FOR JURY TRIAL** |
|  | ) |
|  | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## KRISP'S ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT AND KRISP'S COUNTERCLAIMS

Defendant Krisp Technologies, Inc. ("Krisp"), by and through its attorneys, respectfully submits its Answer to Sanas.AI Inc.'s ("Plaintiff" or "Sanas") Complaint for Patent Infringement (Dkt. 10). Krisp has moved to dismiss Sanas' claims for misappropriation of trade secret and declaratory judgment claim for co-inventorship, and accordingly, no answer to those claims is required at this time. Except as expressly admitted, Krisp denies each and every allegation and characterization in Sanas' Complaint. Krisp's specific responses to the numbered allegations, which correspond to the numbered paragraphs of the Complaint, are set forth below.

Krisp is a leader in the Voice AI technology market. Formed in 2017, Krisp developed best-in-class noise cancellation technology that is used today by over a thousand companies to remove background noise, echo, and cross-talk during calls and meetings. Krisp patented its technology, and went to market in 2018 with plan to develop further Voice AI enhancement technologies including accent conversion technology. When Krisp saw that a new company, Sanas, claimed to have already developed "accent translation" technology in 2021, Krisp reached out to see if a partnership with Sanas would be fruitful. Sanas, for its part, was interested in partnering with Krisp in order to integrate its technology into Krisp's noise cancellation technology, which is a critical foundation for successful accent conversion technology, and thereby gain access to Krisp's substantial customer base. But after nearly a year, the discussions proceeded only far enough for Krisp to realize that Sanas did not have a quality accent conversion technology to contribute to a partnership. Sanas never provided Krisp with access to its technology, and never provided any confidential information to Krisp regarding its technology. Krisp terminated the discussions due to Sanas' "limited technology performance and integration visibility, and misalignment in business communication, which will adversely impact our [Krisp's] customer

relationships," and Krisp completed the development of its own, proprietary, superior accent conversion technology that quickly experienced success in the market. Sanas' allegations, including its patent infringement allegations against Krisp, are entirely meritless.

However, after the talks between Krisp and Sanas terminated, Sanas was left with only its own inferior accent translation technology and no noise cancellation technology. So Sanas copied Krisp's patented noise cancellation technology, and then announced that it was giving it away for "free" to attract Krisp's customers to switch to Sanas so that Sanas could sell its inferior accent translation technology. As alleged herein, Sanas is infringing Krisp's patented technology, and its actions constitute unfair competition and unfair practices.

## **INTRODUCTION**

1.      Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and, therefore, denies the same.

2.      Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and, therefore, denies the same.

3.      Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and, therefore, denies the same.

4.      Krisp states that the website and its content speak for themselves. Krisp denies the remaining allegation in paragraph 4.

5.      Krisp states that the website and its content speak for themselves. Krisp denies the remaining allegation in paragraph 5.

## **KRISP'S COPYCAT TECHNOLOGY**

6.      Krisp denies the allegations in paragraph 6.

7.      Krisp states that the website and its content speak for themselves. Krisp lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 7 and, therefore, denies the same.

8.      Krisp denies the allegations in paragraph 8.

9.      Krisp denies the allegations in paragraph 9.

## THE PARTIES

10.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and, therefore, denies them.

11.     Krisp admits it is a corporation organized under the laws of the State of Delaware, with a principal place of business at 2150 Shattuck Ave., Suite 1300, Berkley, CA 94704.

## JURISDICTION AND VENUE

12.     Paragraph 12 alleges legal conclusions to which no response is required. To the extent a response is required, Krisp admits that the Corrected Complaint purports to be a patent infringement action arising under the Patent Laws of the United States, 35 U.S.C. § 271 et seq. Krisp admits that this Court has subject matter jurisdiction over claims of patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a), 2201, and/or 2022. Krisp denies that Plaintiff has stated a legally sufficient claim for patent infringement, and further specifically denies any infringement.

13.     Krisp does not dispute that this Court has jurisdiction over a meritorious declaratory judgment claim, or that this Court has supplemental jurisdiction over meritorious state law claims alleged. However, Krisp denies that Krisp has alleged a plausible claim for trade secrets misappropriation or for inventorship, and is concurrently moving to dismiss on this basis.  Krisp

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

further denies that Plaintiff has stated any legally sufficient claim, and specifically denies any infringement.

14.     Krisp does not contest that this Court has personal jurisdiction over it for the purposes of this action.  Krisp denies that it has committed any acts of infringement in this District or anywhere else.  Krisp denies the remaining allegations of paragraph 14.

## **FACTUAL BACKGROUND**

15.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and, therefore, denies the same.

16.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and, therefore, denies the same.

17.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and, therefore, denies the same.

18.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and, therefore, denies the same.

19.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and, therefore, denies the same.

20.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and, therefore, denies the same.

21.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the  allegations in paragraph 21, and, therefore, denies the same.

22.     Krisp lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22, and, therefore, denies the same.

23.     Krisp admits that Provisional Patent Application #63/185,345 (Real-Time Accent Conversion Model) states that it was filed on May 6, 2021. Krisp lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 and, therefore, denies the same.

*Krisp Seeks Sanas' Accent Translation Technology*

24.     Krisp admits that on September 7, 2021, Robert Schoenfield sent a LinkedIn message to Shawn Zhang. Krisp denies the remaining allegations of Paragraph 24.

25.     Krisp admits that it had no direct contact with Sanas prior to September 7, 2021. Krisp is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 and, therefore, denies them.

26.     Krisp states that the website referenced and its content speak for themselves. Krisp is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and, therefore, denies them.

27.     Krisp admits that Mr. Zhang did not respond to Mr. Schoenfield's September 7, 2021 LinkedIn message, and admits that Mr. Schoenfield sent a second LinkedIn message to Mr. Zhang on September 8, 2021. Krisp denies the remaining allegations of Paragraph 27.

28.     Krisp is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and, therefore, denies them.

29.     Krisp admits that Mr. Baghdasaryan sent an email to Quentin Clark of General Catalyst on September 27, 2021 that stated, among other things, "I saw GC invested in Sanas.ai. Congrats!" and "We are quite interested in Accent Reduction technologies. It's good to see they are having progress. I would love to connect with the founders and start exploring future

partnerships. Would you mind checking with them if there is an interest to connect?" Krisp denies the remaining allegations of Paragraph 28.

30.     Krisp admits that on October 6, 2021, Mr. Baghdasaryan met over Zoom with Mr. Soderi of Sanas. Krisp further admits that on October 10, 2021, Mr. Baghdasaryan sent an email message to Mr. Soderi and Mr. Serebryakov of Sanas stating "I'll be in the Bay Area tomorrow (Mon.). Would be happy to meet you after Noon if that works for you. Pls let me know." Krisp further admits that no meeting occurred on October 10, 2021. Krisp admits that on October 11, 2021, Mr. Baghdasaryan responded to Sanas that his "flight got cancelled," "I won't be in the US for a couple of months. But we should certainly do another Zoom session, this time a deeper one. The main question we have is how this works in real-time. Experiencing it somehow would be really important for us." Krisp denies the remaining allegations of Paragraph 30.

31.     Krisp admits that on October 11, 2021, Mr. Soderi of Sanas wrote an email message to Mr. Baghdasaryan stating "Sounds good. Agreed. We are just piecing together the latest release with a few updates that we can demo live. We will let you know when it's ready so we can do a deep dive and play around with it:) May I suggest going under NDA for that call? Thoughts?" Krisp further admits that Krisp and Sanas executed a Non-Disclosure Agreement on November 18, 2021, which by its express terms, only protected information that the disclosing party designated as "Confidential Information," which was defined as written information that "is marked 'Confidential,' 'Proprietary' or in some other manner to indicate its confidential nature, and disclosed oral information that "is designated as confidential at the time of its initial disclosure and reduced to a written summary by Discloser that is marked in a manner to indicate its confidential nature and delivered to Recipient within thirty (30) days after its initial disclosure." Further, the NDA made clear that "Confidential Information shall not, however, include any

information that (i) was publicly known . . . (ii) becomes publicly known . . . (iii) is in the rightful possession of Recipient without confidentiality obligations at the time of disclosure . . . (iv) is obtained by Recipient from a third party without an accompanying duty of confidentiality . . . or (v) is independently developed by Recipient without the use or reference to Discloser's Confidential Information . . . ." Krisp specifically denies that Sanas ever designated any information as "Confidential Information" pursuant to the NDA, and denies the remaining allegations of Paragraph 31.

32.     Krisp admits that Krisp and Sanas explored a possible partnership, but denies that Sanas disclosed any "Confidential Information" under the NDA. Krisp lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 32 and, therefore, denies the same.

33.     Krisp admits that Mr. Schoenfield's September 8, 2021 LinkedIn message to Mr. Zhang stated "we have 100's of global contact centers as customers for background noise removal and voice quality enhancements. I would like to explore licensing your tech and share more about our business and customers." Krisp further admits that on September 27, 2021, Mr. Baghdasaryan sent an email to Quentin Clark at General Catalyst stating, in part, "We are quite interested in Accent Reduction technologies. It's good to see they are having progress. I would love to connect with the founders and start exploring future partnerships." Krisp denies the remaining allegations of Paragraph 33.

34.     Krisp admits that it sought to "explor[e] future partnerships" with Sanas, and further admits that Krisp's intention was to go to market with Sanas' technology if the technology met with Krisp's expectations. Krisp denies the remaining allegations of Paragraph 34.

35.    Krisp admits that the parties executed an NDA that, by its express terms, only protected information that the disclosing party designated as "Confidential Information," which was defined as written information that "is marked 'Confidential,' 'Proprietary' or in some other manner to indicate its confidential nature, and disclosed oral information that "is designated as confidential at the time of its initial disclosure and reduced to a written summary by Discloser that is marked in a manner to indicate its confidential nature and delivered to Recipient within thirty (30) days after its initial disclosure."  Further, the NDA made clear that "Confidential Information shall not, however, include any information that (i) was publicly known . . . (ii) becomes publicly known . . . (iii) is in the rightful possession of Recipient without confidentiality obligations at the time of disclosure . . . (iv) is obtained by Recipient from a third party without an accompanying duty of confidentiality . . . or (v) is independently developed by Recipient without the use or reference to Discloser's Confidential Information . . . ." Krisp specifically denies that Sanas ever designated any information as "Confidential Information" pursuant to the NDA, and denies the remaining allegations of Paragraph 35.

36.    Krisp admits that in 2021, Krisp had not yet fully developed its own accent translation technology.  Krisp denies the remaining allegations of Paragraph 36.

37.    Krisp admits that after the parties signed the NDA, Sanas and Krisp had a phone call in which an Indian actor dialed in during a Zoom meeting with a mobile phone to demonstrate Sanas' technology. Sanas did not designate the demonstration, or anything else, as "Confidential Information" under the NDA. Krisp admits that on December 1, 2021 there was a meeting including Mr. Soderi, Mr. Serebryakov, Mr. Baghdasaryan, Mr. Minasyan, Mr. Schoenfield, and Ms. Walker. Krisp denies the remaining allegations of Paragraph 37.

38.    Krisp admits that on January 13, 2022, Mr. Baghdasaryan sent an email that stated, in part, the quoted language. Krisp denies the remaining allegations of Paragraph 38.

39.    Krisp admits that on January 18, 2022, Sanas delayed discussions with Krisp until "after our [fund]raise." Krisp further admits that Mr. Schoenfield sent an email to Sanas on April 13, 2022. Krisp admits that Mr. Shoenfield sent an email to Sanas on June 8, 2022 stating "Thanks again for our alignment call last week" and attaching a "draft of the LOI for your review." Krisp denies the remaining allegations of Paragraph 39.

40.    Krisp admits that on June 13, 2022, Mr. Baghdasaryan sent an email to Mr. Serebryakov stating "As discussed, our team will do a technical evaluation to get more comfortable with the quality and readiness of your technology. The goal is to perform this fast-track evaluation until Friday. We assume you have a CLI app that receives an audio file and returns a processed audio file. Such an app would make things faster." Krisp further admits that this email "There are several things we would like to test" and contained the language quoted in the Paragraph 40 thereafter. Krisp denies the remaining allegations of Paragraph 40.

41.    Krisp admits that Krisp and Sanas had a Slack channel for communicating. Krisp denies that any information exchanged in the Slack channel was designated by Sanas as "Confidential Information" and further denies that any information exchanged was subject to the NDA as implied by Paragraph 41. Krisp denies the remaining allegations of Paragraph 41.

42.    Krisp admits that on August 16, 2022, Mr. Shoenfield stated in an email to Sanas that "we want to proceed with partnership." Krisp further admits that this email attached an "updated LOI" and noted that "[a]s this is the first time that we have integrated technology not developed within Krisp, we have technical and market diligence to perform for integration and

performance" and that "Krisp needs to ensure we continue to deliver market-leading technology on behalf of our customers." Krisp denies the remaining allegations of Paragraph 42.

43.    Krisp admits that on August 16, 2022, Mr. Shoenfield stated the quoted language of Paragraph 43, among other language, in an email to Sanas. Krisp denies the remaining allegations of Paragraph 43.

44.    Krisp admits that it provided a "partial list of our open questions regarding the technical evaluation," which included the quoted bullet points reproduced in Paragraph 44, to Sanas. Krisp denies the remaining allegations of Paragraph 44.

45.    Krisp admits that that on August 18, 2022, Mr. Keshava stated in an email to Mr. Schoenfield, "I would have hoped to add the non competitive clause as it just makes it easier for technology teams to work together but we have an NDA and I am hopeful we can move past it." Krisp denies the remaining allegations of Paragraph 45.

46.    Krisp admits that on August 16, 2022, Mr. Keshava stated in an email to Mr. Schoenfield, "Also, I wanted to reiterate the primary reason for both of us to partner should be to assert market dominance and hence would want to be aggressive on 2023 commitments once we do market diligence/validation and POC's. As long as we can commit to each other on volumes we would chase for next year by end of Dec I am fine with the construct of the partnership." Krisp admits that on August 17, 2022, Mr. Shoenfield stated in an email to Sanas, "We are aligned on the primary reason for both of us – to get to market and secure a first-mover footprint in the industry." Krisp denies the remaining allegations of Paragraph 46.

47.    Krisp admits that on August 21, 2022, Mr. Shoenfield sent an email stating "Arto will lead our technical assessment process and will contact to schedule our teams." Krisp admits

that on August 22, 2022, Mr. Minasyan "[a]dd[ed] Stepan who is Krisp's chief scientist, to the loop" via email. Krisp denies the remaining allegations of Paragraph 47.

48.     Krisp admits that on August 23, 2022, Mr. Minasyan sent an email to Sanas and attached a document called "Questions_to_SANAS" that included the quoted language from Paragraph 48. Krisp denies the remaining allegations of Paragraph 48.

49.     Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and, therefore, denies the same.

50.     Krisp denies the allegations of Paragraph 50.

51.     Paragraph 51 fails to identify any specific information or specific communications that Sanas alleges it provided to Krisp, and accordingly Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 and, therefore, denies the same.

52.     Krisp admits that Sanas and Krisp had one phone call in which an Indian actor dialed in during a Zoom meeting with a mobile phone to demonstrate Sanas' technology. Sanas did not designate the demonstration, or anything else, as "Confidential Information" under the NDA. Krisp denies the remaining allegations of Paragraph 52.

53.     Paragraph 53 fails to identify any specific information or specific communications that Sanas alleges it provided to Krisp, and accordingly Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 and, therefore, denies the same.

54.     Krisp denies the allegations of Paragraph 54.

*Krisp Terminates the Discussions and Copies Sanas' Product*

55.    Krisp admits that Mr. Keshava sent emails on October 24, 2022 and November 3, 2022.  Krisp denies the remaining allegations of Paragraph 55.

56.    Krisp admits that on November 4, 2022, Mr. Shoenfield sent an email to Sanas stating, "Things are very busy for us in the market. We have thought this through with our team and came to the conclusion that our two companies are not ready to engage seriously at this stage. The primary reasons are limited technology performance and integration visibility, and misalignment in business communication, which will adversely impact our customer relationships. We hope that this will change in the coming quarters as Sanas technology becomes more stable and Krisp's roadmap and priorities get more aligned with accent technology." Krisp denies the remaining allegations of Paragraph 56.

57.    Krisp denies the allegations of Paragraph 57.

58.    Krisp denies the allegations in paragraph 58.

59.    Krisp admits that it posted a "blog" post on April 27, 2023 titled "Krisp AI Accent Conversion: Get Ready for a Communication Revolution." Krisp denies the remaining allegations of Paragraph 59.

60.    Krisp states that the blog post speaks for itself. Krisp denies the remaining allegations in Paragraph 60.

61.    Krisp states that the blog post speaks for itself. Krisp denies the remaining allegations in Paragraph 61.

62.    Krisp denies the allegations in paragraph 62.

63.    Krisp admits that its products are the result of Krisp's own hard work and innovation. Krisp denies the remaining allegations of Paragraph 63.

**DIVISIONAL ASSIGNMENT**

64.     Paragraph 64 alleges legal conclusions to which no response is required.

**PATENTS-IN-SUIT**

65.     Krisp denies any patent infringement or that Plaintiff is entitled to any relief or damages, but admits that Sanas purports to state a cause of action concerning U.S. Patent Nos. 11,948,550 ("the '550 Patent"), 12,125,496 ("the '496 Patent"), 12,131,745 ("the '745 Patent"), and 11,715,457 ("the '457 Patent") (together, the "Asserted Patents").

*U.S. Patent No. 11,948,550*

66.      Krisp admits that the '550 Patent, on its face, is titled "REAL-TIME ACCENT CONVERSION MODEL." Krisp denies that the '550 Patent was "duly and legally issued," but admits that the face of the patent identifies an issuance date of April 2, 2024 and lists Mr. Serebryakov and Mr. Zhang as inventors.  Krisp lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66, and, therefore, denies the same.

67.     Krisp admits that the '550 Patent, on its face, lists 22 claims (3 independent and 19 dependent). Krisp denies the remaining allegations of Paragraph 67.

68.     Krisp denies the allegations in paragraph 68.

69.     Krisp admits that Exhibit A appears to be a true and correct copy of the '550 Patent.

*U.S. Patent No. 12,125,496*

70.     Krisp admits that the '496 Patent, on its face, is titled *"*METHODS FOR NEURAL NETWORK-BASED VOICE ENHANCEMENT AND SYSTEMS THEREOF." Krisp denies that the '496 Patent was "duly and legally issued," but admits that the face of the patent identifies an issuance date of October 22, 2024 and identifies Shawn Zhang, Lukas Pfeifenberger, Jason Wu, Piotr Dura, David Braude, Bajibabu Bollepalli, Alvaro Escudero, Gokce Keskin, Ankita Jha, and

Maxim Serebryakov as the named inventors.  Krisp lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 70, and, therefore, denies the same.

71.    Krisp admits that the '496 Patent, on its face, lists 20 claims (3 independent and 17 dependent). Krisp denies the remaining allegations of Paragraph 71.

72.    Krisp denies the allegations in paragraph 72.

73.    Krisp admits that Exhibit B appears to be a true and correct copy of the '496 Patent.

### *U.S. Patent No. 12,131,745*

74.    Krisp admits that the '745 Patent, on its face, is titled *"SYSTEM AND METHOD FOR AUTOMATIC ALIGNMENT OF PHONETIC CONTENT FOR REAL-TIME ACCENT CONVERSION."* Krisp denies that the '745 Patent was "duly and legally issued," but admits that the '745 Patent lists an issuance date of October 29, 2024 and lists Lukas Pfeifenberger and Shawn Zhang as the named inventors.  Krisp lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 74, and, therefore, denies the same.

75.    Krisp admits that the '745 Patent, on its face, lists 20 claims (3 independent and 17 dependent).  Krisp denies the remaining allegations of Paragraph 75.

76.    Krisp denies the allegations in paragraph 76.

77.    Krisp admits that Exhibit C appears to be a true and correct copy of the '745 Patent.

### *U.S. Patent No. 11,715,457*

78.    Krisp admits that the '457 Patent, on its face, is titled "REAL TIME CORRECTION OF ACCENT IN SPEECH AUDIO SIGNALS." Krisp denies that the '457 Patent was "duly and legally issued," but admits that the '457 Patent, on its face, lists an issuance date of August 1, 2023 and identifies Andrei Golman and Dmitrii Sadykov as the named inventors. Krisp

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78, and, therefore, denies the same.

79. Krisp admits that the '457 Patent, on its face, lists 20 claims (3 independent and 17 dependent). Krisp denies the remaining allegations of Paragraph 79.

80. Krisp admits that Exhibit D appears to be a true and correct copy of the '457 Patent.

81. Krisp lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81, and, therefore, denies the same.

82. Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82 and, therefore, denies the same.

## KRISP'S WILLFUL INFRINGEMENT OF SANAS' PATENTS

83. Krisp admits that it has developed AI Accent Conversion technologies, and that it markets and sells them. Krisp denies the remaining allegations of Paragraph 83.

84. Krisp denies the allegations in paragraph 84.

85. Krisp denies the allegations in paragraph 85.

86. Krisp admits that U.S. Patent No. 12,205,609 and 12,223,979, on their face, cite the '496 Patent, the '457 Patent, Publication Nos. 2022/0358903 and 2024/0347070. Krisp admits that U.S. Patent No. Krisp denies the remaining allegations of Paragraph 86.

87. Krisp denies the allegations in Paragraph 87.

88. Krisp denies the allegations in Paragraph 88.

## COUNT ONE: INFRINGEMENT OF U.S. PATENT 11,948,550

89. Krisp incorporates by reference its responses to Paragraphs 1 through 88 of the Complaint and denies that Plaintiff is entitled to any relief or damages.

90.    Krisp denies the allegations in Paragraph 90.

91.    Krisp states that the website and its content speak for themselves. Krisp denies the remaining allegations in Paragraph 91.

92.    Krisp states that the cited blog and video content speak for themselves. Krisp denies the remaining allegations in Paragraph 92.

93.    Krisp states that the cited blog and its content speak for themselves. Krisp denies the remaining allegations in Paragraph 93.

94.    Krisp admits that it has filed patent applications related to accent conversion technology that it has developed. Krisp denies the remaining allegations in Paragraph 94.

95.    Krisp denies the allegations in Paragraph 95.

96.    Krisp denies the allegations in Paragraph 96.

97.    Krisp denies the allegations in Paragraph 97.

98.    Krisp denies the allegations in Paragraph 98.

99.    Krisp denies the allegations in Paragraph 99.

100.    Krisp denies the allegations in Paragraph 100.

101.    Krisp denies the allegations in Paragraph 101.

102.    Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 and, therefore, denies the same

## COUNT TWO: INFRINGEMENT OF U.S. PATENT 12,125,496

103.    Krisp incorporates by reference its responses to Paragraphs 1 through 102 of the Complaint and denies that Plaintiff is entitled to any relief or damages.

104.    Krisp denies the allegations in Paragraph 104.

105.    Krisp denies the allegations in Paragraph 105.

106.    Krisp states that the cited blog speaks for itself. Krisp denies the remaining allegations in Paragraph 106.

107.    Krisp states that the cited blog speaks for itself. Krisp denies the remaining allegations in Paragraph 107.

108.    Krisp denies the allegations in Paragraph 108.

109.    Krisp denies the allegations in Paragraph 109.

110.    Krisp denies the allegations in Paragraph 110.

111.    Krisp denies the allegations in Paragraph 111.

112.    Krisp denies the allegations in Paragraph 112.

113.    Krisp denies the allegations in Paragraph 113.

114.    Krisp denies the allegations in Paragraph 114.

115.    Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 and, therefore, denies the same.

## <u>COUNT THREE: INFRINGEMENT OF U.S. PATENT 12,131,745</u>

116.    Krisp incorporates by reference its responses to Paragraphs 1 through 115 of the Complaint and denies that Plaintiff is entitled to any relief or damages.

117.    Krisp denies the allegations in Paragraph 117.

118.    Krisp states that the cited  blog speaks for itself. Krisp denies the remaining allegations in Paragraph 118.

119.    Krisp denies the allegations in Paragraph 119.

120.    Krisp denies the allegations in paragraph 120.

121.    Krisp denies the allegations in Paragraph 121.

122.    Krisp denies the allegations in Paragraph 122.

123.    Krisp denies the allegations in Paragraph 123.

124.    Krisp denies the allegations in Paragraph 124.

125.    Krisp denies the allegations in Paragraph 125.

126.    Krisp denies the allegations in Paragraph 126.

127.    Krisp denies the allegations in Paragraph 127.

128.    Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 and, therefore, denies the same

**COUNT FOUR: INFRINGEMENT OF U.S. PATENT 11,715,457**

129.    Krisp incorporates by reference its responses to Paragraphs 1 through 128 of the Complaint and denies that Plaintiff is entitled to any relief or damages.

130.    Krisp denies the allegations in Paragraph 130.

131.    Krisp states that the cited website speaks for itself. Krisp denies the remaining allegations in Paragraph 131.

132.    Krisp states that the cited website speaks for itself. Krisp denies the remaining allegations in Paragraph 132.

133.    Krisp states that the cited blog speaks for itself. Krisp denies the remaining allegations in Paragraph 133.

134.    Krisp denies the allegations in Paragraph 134.

135.    Krisp denies the allegations in Paragraph 135.

136.    Krisp denies the allegations in Paragraph 136.

137.    Krisp denies the allegations in Paragraph 137.

138.    Krisp denies the allegations in Paragraph 138.

139.    Krisp denies the allegations in Paragraph 139.

140.    Krisp denies the allegations in Paragraph 140.

141.    Krisp lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141 and, therefore, denies the same.

### COUNT FIVE: DECLARATORY JUDGMENT

### (Co-Inventorship and Co-Ownership Over U.S. Patent Nos. 12,205,609 and 12,223,979)

Krisp has moved to dismiss Sanas' co-inventorship claim to Krisp's '609 and '979 Patents, and therefore no answer to Paragraphs 142-149 is required at this time.

### COUNT SIX: MISAPPROPRIATION OF TRADE SECRETS

### (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836)

Krisp has moved to dismiss Sanas' claims for misappropriation of trade secrets, and therefore no answer to Paragraphs 150-159 is required at this time.

### COUNT SEVEN: MISAPPROPRIATION OF TRADE SECRETS

### (Violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq.)

Krisp has moved to dismiss Sanas' claims for misappropriation of trade secrets, and therefore no answer to Paragraphs 160-168 is required at this time.

### PRAYER FOR RELIEF

Krisp denies that Plaintiff is entitled to any relief in connection with the allegations in its Complaint, including, without limitation, paragraphs A-U in the Prayer for Relief.

### DEMAND FOR JURY TRIAL

This paragraph sets forth Plaintiff's demand for a jury trial to which no response is required.

## **AFFIRMATIVE DEFENSES**

Based on information and belief, Krisp asserts the following defenses and reserves the right to amend its defenses and to add additional defenses, including, without limitation, defenses revealed during discovery. Krisp assets its defenses as set forth below.

### **First Affirmative Defense: Non-Infringement**

Sanas is not entitled to any relief on its patent infringement claims because Krisp does not and has not infringed, induced infringement, or contributorily infringed, directly, indirectly, willfully or otherwise, one or more of the asserted claims of the '550, '496, '745, or '457 Asserted Patents literally or under the doctrine of equivalents.

### **Second Affirmative Defense: Invalidity**

One or more of the claims of the '550, '496, '745, and/or '457 Patents are invalid and/or unenforceable for failing to satisfy the conditions of patentability set forth in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### **Third Affirmative Defense: Limitation on Damages**

Sanas' claim for damages are limited, in whole or in part, pursuant to 35 U.S.C. §§ 284, 286 and/or 287.

### **Fourth Affirmative Defense: No Injunctive Relief**

Sanas is not entitled to injunctive relief as a matter of law and cannot satisfy the requirements applicable to its request for injunctive relief in any form. Sanas cannot demonstrate irreparable harm, as any damages it could demonstrate are remedied by monetary damages.

### **Fifth Affirmative Defense: Prosecution History Estoppel**

Sanas is barred, under the doctrine of prosecution history disclaimer and prosecution history estoppel, from construing the claims of the '550, '496, '745, and/or '457 Patents in such a

way as they may cover any accused products by reasons of statements made to the United States Patent and Trademark Office during prosecution of the applications which led to the issuance of the '550, '496, '745, and/or '457 Patents.

### Sixth Affirmative Defense: Equitable Defenses (Patent Misuse/Unclean Hands)

Sanas is barred from recovery in whole or in part by the doctrines of patent misuse and/or unclean hands to the extent that it has attempted to use the '550, '496, '745, and/or '457 Patents to obtain market benefit beyond that which inures in the statutory patent right. Sanas' maintenance of the present suit in order to obtain market benefit beyond the narrow patent rights reflected in the '550, '496, '745, and/or '457 Patents constitute patent misuse and/or unclean hands.

### Seventh Affirmative Defense: No Attorneys' Fees

Krisp has a good faith belief that the '550, '496, '745, and/or '457 Patents are invalid, not infringement, and/or unenforceable, and thus Sanas cannot obtain attorneys' fees or costs and cannot demonstrate an exceptional case under 35 U.S.C. § 285.

### PRAYER FOR RELIEF

WHEREFORE, Krisp respectfully requests entry of judgment that:

A. Finds in favor of Krisp and against Sanas;

B. Denies Sanas' prayer for injunctive relief;

C. Finds in favor of Krisp and against Sanas on Krisp's affirmative defenses;

D. Finds that the claims of the '550, '496, '745, and/or '457 Patents are invalid;

E. Finds that Krisp has not infringed the '550, '496, '745, and/or '457 Patents;

F. Declares that this case is exceptional under 35 U.S.C. § 285 in favor of Krisp;

G. Awards Krisp its costs and attorneys' fees incurred in this action; and

H. Grants such other and further relief as the Court may deem just and proper.

## KRISP'S COUNTERCLAIMS

Krisp, by and through its undersigned counsel, asserts the following counterclaims for PATENT INFRINGEMENT, VIOLATIONS OF THE CALIFORNIA UNFAIR PRACTICES ACT, and UNFAIR COMPETITION against Sanas.

## THE PARTIES

1.    Krisp is a Delaware corporation with its principal place of business at 2150 Shattuck Ave, Berkeley, California.

2.    Upon information and belief, Sanas is a Delaware corporation with its principal place of business at 437 Lytton Ave, Suite 200, Palo Alto, California.

## JURISDICTION AND VENUE

3.    Sanas is subject to this Court's personal jurisdiction, and venue is proper in this judicial district, at least because Sanas initiated this lawsuit and, on information and belief, Sanas has a permanent and continuous presence in, has committed acts of infringement in, and maintains a regular and established place of business in this district.

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and/or 2202 based on the actual controversy between Krisp and Sanas arising under the patent laws of the United States. This Court has supplemental jurisdiction over Krisp's state law claims herein pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

### *Krisp Pioneers Noise Suppression In Voice AI*

5.    Krisp began as an idea between long-time friends, Davit Baghdasaryan and Artavazd ("Arto") Minasyan, back in 2016.  Frustrated with constantly experiencing background

noise during virtual meetings, Baghdasaryan wondered whether machine learning could be used to solve this problem and mentioned his idea to Minasyan.

6.    Minasyan was interested.  He reached out to another friend, Stepan Sargsyan, and together they began work building noise-cancellation technology.  While neither Minasyan nor Sargsyan had a background in machine learning ("ML") or artificial intelligence ("AI"), both had advanced degrees in physics and mathematics and after six months of research and hard work, they had a prototype.

7.    When Baghdasaryan experienced the prototype, he was impressed and intrigued. The first iteration was not perfect, but it was a completely new direction in noise cancellation with enormous potential.

8.    Together, Baghdasaryan and Minasyan founded Krisp (formerly called 2Hz, Inc.) in 2017 with the goal of creating AI-powered, revolutionary voice technologies that enable people to be more effective communicators. Sargsyan joined the company, too, as Chief Scientist.

9.     In August 2018, Krisp released its AI-powered noise suppression technology for private beta testing. Krisp described the technology as an "easy-to-use but powerful app" that "recognizes your voice and separates it from extraneous noise next to you, leaving only your clean voice." https://krisp.ai/blog/private-beta-launch-of-krisp-2/.  In describing the "magic" of the technology, Krisp emphasized the use of "Deep Neural Networks (DNN)," which are a core component of modern AI and ML:

> **5. Some "magic" underneath**
>
> Curious what's "under the hood" of Krisp? The answer — Deep Neural Networks (DNN).
> We designed our own DNN and taught Krisp to recognize what's noise and what's a human voice. During conferencing call Krisp performs its magic on real-time audio and separates background noise from a human speech by leaving only the latter.

10.   Krisp further developed a unique software architecture involving a virtual microphone and on-device noise cancellation. The combination of a virtual microphone and on-device AI, along with enterprise-grade software, was a new and innovative concept.

11.   Concurrent with the release of its noise suppression technology, Krisp filed for patent protection. On August 21, 2018, Krisp filed provisional patent application 62/720,702, entitled "Speech Enhancement and Noise Suppression System and Methods," and the United States Patent and Trademark Office awarded Krisp U.S. Patent No. 11,100,941 on August 24, 2021.

12.   Krisp's unique architecture and on-device noise cancellation technology was so innovative that it was voted as the 2018 "Product of the Year" in Audio & Voice Category by Product Hunt, a platform that hunts for the best innovative product for each industry.

13.    Krisp went on to win additional awards for its innovative technology, including a listing on Forbes' America's Most Promising Artificial Intelligence Companies of 2020 (Forbes AI 50), a listing on the TIME List of The 100 Best Inventions of 2020, and two Webby Awards including the "People's Voice Winner" (2021) and the "Best Use of AI & Machine Learning" category (2022).

14.   Krisp pioneered the noise cancellation category. In April 2022, software platform G2 announced a new category called "Noise Cancellation Software" where Krisp was the only player.

*Krisp Builds on Foundational Noise Suppression Technology*

15.   Krisp quickly grew to be a market leader in real-time Voice AI technology.

16.   Krisp's work in developing its own best-in-class technologies has been both innovative and continuous. By 2020, Krisp was already building on its foundational noise

suppression technology, with a documented technology roadmap in place to develop complementary technologies, including voice quality enhancements and accent conversion. In fact, Krisp demonstrated its intention to develop accent conversion technology to potential investors in 2020.



17.    By at least July 2021, Krisp was developing enhancements using a teacher/student machine learning architecture.



18.    While development of this accent conversion enhancement was underway, Krisp saw that a new company, Sanas, began marketing "real-time accent translation technology," although no details about the technology were publicly available. Intrigued, Krisp reached out to Sanas to "start exploring future partnerships." Krisp further made clear that it already had the foundational technology and customers "for background noise removal and voice quality enhancements," and that Krisp was already "interested in Accent Reduction technologies."

19.     Between late September 2021 and early June 2022, Krisp and Sanas had a series of introductory calls and planning meetings. During these discussions, Krisp and Sanas got to know each other, discussed a framework for future discussions, and negotiated a Non-Disclosure Agreement ("NDA") with provisions that could protect "Confidential Information" that might potentially be disclosed during the discussions.

20.     Krisp and Sanas executed the NDA on November 18, 2021. By its express terms, the NDA only protected information that the disclosing party designated as "Confidential Information," which was defined as written information that "is marked 'Confidential,' 'Proprietary' or in some other manner to indicate its confidential nature, and disclosed oral information that "is designated as confidential at the time of its initial disclosure and reduced to a written summary by Discloser that is marked in a manner to indicate its confidential nature and delivered to Recipient within thirty (30) days after its initial disclosure." Further, the NDA made clear that "Confidential Information shall not, however, include any information that (i) was publicly known . . . (ii) becomes publicly known . . . (iii) is in the rightful possession of Recipient without confidentiality obligations at the time of disclosure . . . (iv) is obtained by Recipient from a third party without an accompanying duty of confidentiality . . . or (v) is independently developed by Recipient without the use or reference to Discloser's Confidential Information . . . ." The NDA is Exhibit A to these Counterclaims.

21.     Sanas never disclosed any information to Krisp designated "Confidential Information" under the provisions of the NDA.

22.     Furthermore, Krisp's engagement with Sanas went nowhere. When Krisp proposed to "introduce our engineering teams" in January 2022, Sanas pushed it off to instead focus on its fundraising efforts and "initiate the engineering conversations right after our raise."

23.     In the meantime, Krisp continued with the development of its own accent conversion technology, including with the utilization of both teacher/student training architectures and "parallel data" methods, long before ever having any substantive discussion with Sanas. This is contemporaneously documented, such as the below examples from Krisp's internal product development files.





24.     By mid-June 2022, Krisp and Sanas finally agreed to introduce their technical leaders. For Krisp, this was necessary to "do a technical evaluation to get more comfortable with the quality and readiness of your technology."

25.     For example, a Slack channel was set up between Krisp and Sanas. During a brief 7-day period of sporadic communications between June 15, 2022 and June 22, 2022, Sanas never disclosed any confidential information to Krisp through the Slack channel. After June 22, 2022, the Slack channel went dormant.

26.     On or about June 23, 2022 Sanas publicly released a "demo" of its technology on its website.   https://web.archive.org/web/20220623161554/https://www.sanas.ai/demo. Far from a realistic conversion of the speaker's voice, reviewers of the demo commented that it "sounds like a computer" and is "AI generated and robotic" and "fake." https://www.youtube.com/watch?v=bXySZQaCaXE, https://www.youtube.com/watch?v=ur28EpG9CR0.

27.     Another month and a half went by, with no substantive discussions between Krisp and Sanas. Given that Sanas had publicly released its demo but had not provided any confidential technical information to Krisp regarding its technology, there was nothing for Krisp to assess.

28.     Nevertheless, in August 2022 Krisp agreed to continue discussions about a potential partnership with Sanas, and the parties discussed a "Letter of Intent."  The general framework was that Krisp would evaluate whether Sanas' accent conversion technology could be integrated with Krisp's existing noise cancellation technology. If it could, then Krisp could market Sanas' technology to Krisp's substantial existing customer base.

29.     Krisp's intention was to go to market with Sanas' technology if the technology met with Krisp's expectations.  This was reflected in the "Letter of Intent," and Krisp consistently communicated to Sanas that Krisp's intention was to have the best accent conversion technology inside the product.  But, as Krisp made clear to Sanas, "we have technical and market diligence to perform for integration and performance" of Sanas' technology before any agreement could be discussed.

30.     A call between Sanas and Krisp was scheduled for August 24, 2022.  Krisp sent a list of questions to Sanas in advance of the call, but Sanas did not provide any confidential information to Krisp in response.

31.     Sanas never identified any information it shared with Krisp during the August 24, 2022 call as "Confidential Information" pursuant to the provisions of the NDA.

32.     After the August 24, 2022 call, Krisp asked Sanas to provide its API for evaluation. Sanas never provided it, either.

33.     Ultimately, Sanas never provided Krisp with any access to its technology.  Krisp, based on what it could learn from Sanas' public demonstrations, was not comfortable with the readiness and performance of the Sanas technology. There was, as a result, no path to partnership. Having concluded that "our two companies are not ready to engage seriously at this stage," Krisp terminated the discussions on November 4, 2022, accurately stating: "The primary reasons are limited technology performance and integration visibility, and misalignment in business communication, which will adversely impact our customer relationships."

34.     Throughout this period, Krisp had continued development of its own proprietary technologies.  On March 28, 2023, Krisp unveiled its AI Meeting Assistant technology, a non-intrusive tool that transcribes voice conversations in real time across any application and summarizes main points, action items, and meeting notes for sharing and collaboration.  And on April 27, 2023, Krisp publicly announced "early access" to its proprietary Krisp AI Accent Conversion technology.

35.     A far cry from the "robotic" and "fake" Sanas product, Krisp paired its best-in-market noise cancellation technology with its proprietary accent conversion technology to generate impressive, high quality results. Krisp quickly experienced success in the market and obtained patent protection on its own proprietary accent conversion technology. Even other competitors in the space acknowledge that Krisp's accent conversion technology is superior to Sanas':

**Krisp vs Sanas**
(% of >750 votes pre row)

| Metric | Krisp % | Sanas % | Tie % | Winner |
|---|---|---|---|---|
| Preference | 66.8% | 9.6% | 23.6% | Krisp |
| Intelligibility | 55.8% | 6.4% | 37.8% | Krisp |
| Acoustic Quality | 66.4% | 6.9% | 26.7% | Krisp |
| Accent Softening | 39.7% | 10.9% | 49.4% | Krisp |
| Naturalness | 36.2% | 25.8% | 38.1% | Krisp |

https://tomato.ai/blog/product/tomato-ai-vs-krisp-sanas-accent-softening-comparison/.

36.     Despite now characterizing Krisp's April 27, 2023 announcement as a first "hint of [ ] deception" (Dkt. 10 ¶ 59), Sanas' own actions contradict the narrative it presents in this lawsuit. Sanas *never* accused Krisp of anything improper in the two years leading up to the filing of this lawsuit. Sanas *never* designated any information as "Confidential Information." Sanas *never* suggested to Krisp that it believed it had disclosed any "Confidential Information" to Krisp. Sanas *never* accused Krisp of using any purported "Confidential Information." Sanas *never* requested that Krisp return or destroy any alleged "Confidential Information" even though the NDA expressly provided for such a request. In fact, Sanas' CEO had a conversation with Krisp's CEO, Mr. Baghdasaryan, at a conference just weeks before Sanas filed this lawsuit, and during that conversation Sanas *never* mentioned any purported wrongdoing and certainly *never* suggested a lawsuit was coming. To the contrary, Sanas' CEO invited Mr. Baghdasaryan for a friendly visit to Sanas' office.

### *Sanas Copies Krisp's Noise Cancellation Technology*

37.     One thing that became abundantly clear during the parties brief exploratory engagement was that Sanas saw immense value in Krisp's noise cancellation business and customer base. Background noise suppression is a critical foundation for successful accent

conversion technology, because removing or isolating background noise ensures that the accent conversion model receives a clean, uncorrupted vocal signal.   In other words, accent conversion technology cannot operate properly without noise cancellation.

38.    Sanas did not have its own noise cancellation technology, but understood its importance.  Sanas' own mock-ups make clear that Sanas knew, back in 2021, that the noise suppression that Krisp had already pioneered and already had in the market would be vital to accent conversion technology. https://techcrunch.com/2021/08/31/sanas-aims-to-convert-one-accent-to-another-in-real-time-for-smoother-customer-service-calls/?utm_source=chatgpt.com.    Sanas' mock-ups even visually resembled Krisp's design, as seen from a comparison of Krisp's already-commercially-available design versus and Sanas' mock-up design from 2021:



39.    Not surprisingly, then, Sanas' "primary reason" for partnering with Krisp was to integrate with *Krisp's* noise cancellation technology, and thereby gain access to Krisp's existing customer base to "secure customers" for Sanas' technology.

40.    The proposed partnership between Krisp and Sanas was, of course, contingent on Krisp's ability to perform technical and quality diligence for integration and performance of Sanas' technology, which never occurred.  The parties' discussions terminated, and Sanas was left with its inferior accent correction technology and no noise cancellation technology.

41.     Sanas then copied Krisp's patented noise cancellation technology. In August 2024, Sanas first announced that it was offering noise cancellation technology.

42.     Krisp was already the established market leader with superior technology, and merely announcing a copy-cat product was not enough. So Sanas added a kicker: Sanas not only took Krisp's patented noise cancellation technology without permission, but it announced that it was *giving it away for free "forever*."

> We are thrilled to announce a major milestone for the customer service industry: we are offering our cutting-edge Noise Cancellation technology for free, and it's available now! This groundbreaking decision reflects our commitment to breaking down communication barriers and enhancing the experience of your customers and agents.
>
> ## Why Free Matters
>
> We believe that this fundamental tool should be accessible to everyone, which is why we're offering it for free. This move helps contact centers save on operational costs and ensures that all customer calls are noise-free, stress-free, and cost-free forever.

43.     In short, Sanas stole Krisp's patented technology, and then it attempted to steal Krisp's customers by offering to give them Krisp's technology for free if they switched to Sanas.

44.     Even further, Sanas affirmatively requires that a customer's use the Sanas free app is conditioned on the customer not using any Krisp app.  Further, Sanas implemented programming so that the Sanas app will refuse to install if the Krisp app (which Sanas calls an "unsupported application") is on the customer's system, as illustrated below:

 

45. The above facts tell a clear story. Sanas engaged with Krisp in the hopes that Krisp could successfully market Sanas' inferior technology to Krisp's substantial customer base. When that fell through, Sanas copied Krisp's patented technology and gave it away "for free" to induce Krisp's customers to switch to Sanas so that Sanas could then sell its inferior accent conversion technology.

## COUNT ONE: INFRINGEMENT OF U.S. PATENT 11,100,941 (" '941 Patent")

46. Krisp repeats and realleges all preceding paragraphs of this Complaint as set forth herein in full.

47. Krisp is the lawful owner of all right, title, and interest in the '941 Patent entitled "SPEECH ENHANCEMENT AND NOISE SUPPRESSION SYSTEMS AND METHODS" including the right to sue and recover for infringement thereof. The '941 Patent was duly and legally issued August 24, 2021 and lists named inventors Stepan Sargsyan and Artavazd Minasyan. A true and correct copy of the '941 Patent is attached as Exhibit B.

48. The '941 Patent describes speech enhancement and noise suppression systems and methods. Unlike conventional speech enhancement systems that result in an audio signal that still includes noise features, the '941 describes processing audio through a neural network (*i.e.,*

machine learning) to compute clean voice coefficients that output an audio file having enhanced speech.

49.    On information and belief, Sanas directly infringes, either literally or under the doctrine of equivalents, at least method claims 1 and 14 of the '941 Patent by making, using, offering for sale, and selling its "Noise Cancellation" products ("Sanas' Infringing Products"). Further, Sanas indirectly infringes at least claim 1 of the '941 patent through active inducement of infringement and contributory infringement, including by supplying Sanas' Infringing Products to third parties that use the claimed method and system. Sanas advertises, offers for sale, and otherwise promotes the Sanas Infringing Products on its website.  Sanas has also made, used, and offered for sale its products in the United States in connection with its marketing and demonstration of the Sanas Infringing Products via direct consumer marketing in the United States, and marketing at trade shows including the Customer Contact Week (CCW) trade show in Las Vegas, Nevada. Moreover, on information and belief, Sanas has offered for sale the Sanas Infringing Products to major customers in the United States.

50.    Sanas markets, advertises, offers for sale, and/or otherwise promotes the Sanas Infringing Products and does so to induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, and/or offer to sell the Sanas Infringing Products individually as well as through convoyed sales where the Sanas Infringing Products are part of a functional unit together with other Sanas product offerings. On information and belief, Sanas has done so with knowledge that Krisp's technology is patented or with willful blindness.

51.    Sanas' Infringing Products infringe at least claim 1 of the '941 Patent at least in the exemplary manner described below, which is not intended to limit Krisp's right to allege that other

activities of Sanas infringe the identified claim or any other claims of the '941 Patent or any other patents.

52.    Sanas' Infringing Products perform a "method of speech enhancement":



https://www.sanas.ai/





https://www.sanas.ai/noise-cancellation

53.    Sanas' Infringing Product "receive[s] an audio file comprising a combination of voice and noise data," "divide[s] said audio file into a plurality of frames," and "perform[s] a discrete Fourier transform on each frame of a first subset of said plurality of frames to provide a plurality of frequency-domain outputs" through its use of STFT, or "short-time Fourier

Transform." STFT applies a Fourier Transform to short fragments of time, *i.e.,* frames taken from a longer signal.

### 9.2. Defining the STFT

The Short-Time Fourier Transform (STFT) does exactly what it says: it applies the Fourier transform to short fragments of time, that is, frames taken from a longer signal. At a conceptual level, there is not too much going on here: we just extract frames from the signal, and apply the DFT to each frame. However, there is much to discuss in the details.

https://brianmcfee.net/dstbook-site/content/ch09-stft/STFT.html

Sanas' Infringing Product uses STFT:

The Fourier Transform is a tool that decomposes a signal into its frequency components. It shows what frequencies are present in the sound and how strong they are. Instead of viewing sound as a function of time, we view it as a function of frequency. This is the frequency domain.

But speech changes constantly. A static frequency breakdown isn't enough. So we use a variation called the Short-Time Fourier Transform (STFT). It breaks the signal into small overlapping windows and computes the frequency content of each slice. When we visualize these slices side by side, we get a spectrogram. The human cochlea within the ear performs this operation continuously via the small hairs, each tuned to a small range of frequencies.

https://www.sanas.ai/blog/reclaiming-the-full-spectrum-of-human-speech-how-we-built-real-time-audio-upscaling-from-low-8khz-to-high-fidelity-16khz

54.    The Sanas Infringing Products "input[ ] said plurality of frequency-domain outputs of said discrete Fourier transform and a noise model approximation to a neural network":





Figure 2: Sanas Speech Enhancement Simplified Block Diagram

https://www.sanas.ai/blog/reclaiming-the-full-spectrum-of-human-speech-how-we-built-real-time-audio-upscaling-from-low-8khz-to-high-fidelity-16khz

55.    The Sanas Infringing Products "obtain[ ] a ratio mask as an output from said neural network" by obtaining a "gain mask" obtained in the "Mask Estimator" module that "predicts" a gain mask. The Sanas Infringing Products obtain a ratio mask as an output from the neural network:



https://www.sanas.ai/blog/we-outperformed-the-worlds-top-AI-labs-then-opened-it-to-everyone

56.    On information and belief, the Sanas Infringing Products "comput[e] clean voice coefficients using said ratio mask," as indicated by Sanas' use of a gain mask that is "multiplicative" and is used to reconstruct clean audio:

**Mask Estimator**

Inspired by techniques like Wiener filtering, this module predicts a gain mask that suppresses noise in the latent space while preserving speech components. The mask is multiplicative and adapts frame by frame to the incoming signal.

**Inverse Projection**

The final module reconstructs the cleaned audio by reversing the latent projection. The output is a denoised segment of speech, which is then stitched together with prior segments to form a continuous, intelligible audio stream.



**Figure 1**: Simplified Noise Cancellation Block Diagram

https://www.sanas.ai/blog/we-outperformed-the-worlds-top-AI-labs-then-opened-it-to-everyone

57.    The Sanas Infringing Products "output[ ] an audio file having enhanced speech and suppressed noise based on said computed clean voice coefficients," producing a final audio result with speech enhancement and clean speech from noise cancellation:

## More than just noise cancellation

Sanas doesn't just remove noise - it **enhances and amplifies speech**. Our multi-patented technology delivers **omni-directional capabilities** while transforming low-fidelity **8kHz** audio into rich, **16kHz** sound that's clear, natural, and human.



https://www.sanas.ai/noise-cancellation



https://www.sanas.ai/blog/reclaiming-the-full-spectrum-of-human-speech-how-we-built-real-time-audio-upscaling-from-low-8khz-to-high-fidelity-16khz



https://www.sanas.ai/blog/we-outperformed-the-worlds-top-AI-labs-then-opened-it-to-everyone

58.     Moreover, the Sanas Infringing Products perform a "method of bandwidth expansion," including "receiving an audio file comprising a combination of voice data and noise data having a first bandwidth" (e.g., 8KHz) and "constructing a frequency spectrum having a second bandwidth based on an output of the neural network and the determined phase, the second bandwidth being greater than the first bandwidth" (e.g., 16KHz) and "outputting an audio file having the second bandwidth based on the audio signals for the plurality of frames." The Sanas Infringing Products' "bandwidth expansion" method also comprises "dividing said audio file into a plurality of frames" (e.g., the windowing process of STFT) and "performing a fast Fourier transform to obtain audio features corresponding to the combination of voice and noise data" (e.g., STFT) and "taking an inverse fast Fourier transform of the frequency spectrum to provide an audio signal" (e.g., ISTFT).



Figure 2: Sanas Speech Enhancement Simplified Block Diagram

https://www.sanas.ai/blog/reclaiming-the-full-spectrum-of-human-speech-how-we-built-real-time-audio-upscaling-from-low-8khz-to-high-fidelity-16khz

59.     Krisp has complied with the requirements of 35 U.S.C. § 287 with respect to the '941 Patent.

60.     Upon information and belief, Sanas has been and continues to be willfully infringing the '941 Patent as it has had knowledge of Krisp's patented noise cancellation technology for nearly four years and has chosen to copy Krisp's patented technology.

61.     Sanas' infringement of the '941 Patent was and continues to be willful and deliberate, entitling Krisp to enhanced damages.

62.     Sanas' infringement of the '941 Patent is exceptional and entitles Krisp to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

63.     Sanas' infringement has caused and continues to cause damage to Krisp, and Krisp is entitled to recover damages sustained because of Sanas' wrongful acts in an amount subject to proof at trial.

## COUNT TWO: CALIFORNIA UNFAIR PRACTICES ACT
### (Cal. Bus. & Prof. Code § 17043)

64.     Krisp repeats and realleges all preceding paragraphs of this Complaint as set forth herein in full.

65.     As alleged herein, Sanas not only took Krisp's technology, but it gave it to customers "for free" for the specific purpose of gaining unfair competitive advantage against Krisp and to take customers away from Krisp.

66.     Under California Business and Professions Code § 17043 (entitled "Sales Under Cost; Gifts"), "[i]t is unlawful for any person to sell any article or product at less than the cost thereof to such vendor, or to give away any article of product, for the purpose of injuring competitors or destroying competition."

67.     Here, Sanas claims to have developed noise cancellation technology at considerable time and expense, yet then gave it to potential customers for free for the purpose of injuring competitors such as Krisp or destroying competition. The strategy is a "freemium" model where

the free noise cancellation is used to attract a large user base that can then be introduced or converted to Sanas' accent translation. By giving away a valuable technology solution at no cost, Sanas gets its foot in the door at contact center and call center customers. At the same time, by removing the cost of the noise cancellation technology, Sanas unfairly targets the ability of competitors like Krisp to sell their own proprietary technology. Even further, Sanas has programmed its technology to condition the use of Sanas' "free" noise cancellation features on the customer *not* using Krisp's patented technology. Sanas' claims that it is "giving back to the industry" are predatory, especially considering that Sanas took the technology from Krisp in the first place.

68.    Moreover, Sanas' offering of its noise cancellation to customers for an unlimited duration and at no cost does not reflect the true value of or cost to maintain and make the service available. Free *trials* are typical for the market, but free and unlimited access to noise cancellation technology is not. For example, Krisp, having operated in the industry since at least 2018, is able to go beyond a preliminary free trial and can competitively offer its customers 60 minutes of free noise cancellation per day. Beyond that threshold, however, the cost of free noise cancellation must be integrated into one of Krisp's several packages starting at $8/month. Iris Audio, another competitor in the real-time noise cancellation market, similarly offers its IRIS Clarity noise cancellation service for £9.50/month. These examples of typical pricing schemes for real-time noise cancellation make it apparent that Sanas only offers its service at no cost to intentionally divert business from Krisp and other market players.

69.    Sanas is and has been for some time engaged in the business of selling noise cancellation technology in California at a price less than the cost and with the purpose of injuring

competitors and destroying competition in the noise cancellation market in violation of the California Unfair Practices Act, California Business & Professions Code § 17043.

70.     Sanas was not only aware that its acts would injure Krisp and/or destroy competition in the noise cancellation market, but it also engaged in below-cost sales for the purpose of injuring Krisp or destroying competition.

71.     As a result of these acts, Krisp has been injured in the form of lost profits and diminished business value in an amount to be proved at trial.

### COUNT THREE: CALIFORNIA UNFAIR PRACTICES ACT
**(Cal. Bus. & Prof. Code § 17044 *et. seq.*)**

72.     Krisp repeats and realleges all preceding paragraphs of this Complaint as set forth herein in full.

73.     Sanas has been engaged in the business of selling the noise cancellation technology within the State of California.

74.     Sanas has sold noise cancellation technology as a loss leader, such that the effect has been to divert trade from Krisp or otherwise injure Krisp specifically and competition generally, in violation of the California Unfair Practices Act, California Business & Professions Code § 17044.

75.     Sanas was not only aware that its acts would divert trade from or otherwise injure Krisp specifically and competition generally in the Voice AI market, but it engaged in loss leader sales for the sole and express purpose of injuring Krisp and competition.

76.     As a result of these acts, Krisp has been injured in the form of lost profits and diminished business value in an amount to be proved at trial.

## COUNT FOUR: CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200 *et. seq.*)

77.     Krisp repeats and realleges all preceding paragraphs of this Complaint as set forth herein in full.

78.     The conduct complained of herein – including below-cost sales and conditioning the use of Sanas' technology on not using Krisp's technology – constitutes unlawful business practices inn that such conduct violates California's Unfair Trade Practices Act.

79.     The anticompetitive behavior of Sanas as describe above is unfair, unconscionable, and unlawful and in any event is a violation of the policy or spirit of the law because it significantly harms and threatens competition.

80.     Sanas' anticompetitive behavior and unfair business practices are part of an ongoing practice, and any purported utility of their conduct is outweighed by the gravity of the consequences to Krisp and the competition.

81.     Sanas' unfair, unconscionable, and unlawful business practices constitute unfair competition in violation of the Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*

82.     As a result of Sanas' unlawful and/or unfair business practices, Krisp has been and will be injured in its business and property through lost income and profits, increased costs, and diminished business value. In addition, Sanas has been unjustly enriched because of these same unlawful and/or unfair business practices through increased profits and Krisp is entitled to restitution as a result thereof.

## PRAYER FOR RELIEF

WHEREFORE, Krisp respectfully requests the following relief:

1.     A judgment that Sanas has infringed, directly and/or indirectly, literally or under the doctrine of equivalents, one or more claims of Krisp's '941 Patent in violation of 35 U.S.C. § 271, and that such infringement is willful;

2.     An order enjoining Sanas from further infringing Krisp's '941 Patent in any way, by itself or in combination with accent conversion technology;

3.     An award of damages sufficient to compensate Krisp for Sanas' infringement under 35 U.S.C. § 284, and an enhancement of damages on account of Sanas' willful infringement;

4.     A determination that this case is an exceptional case under 35 U.S.C. § 285 and that Krisp be awarded attorney's fees;

5.     Costs and expenses in this action;

6.     An award of prejudgment and post-judgment interest;

7.     A determination that Sanas engaged in below-cost sales in violation of California's Unfair Practices Act, California Business & Professions Code § 17043;

8.     A determination that Sanas engaged in selling a loss leader in violation of California's Unfair Trade Practices Act, California Business & Professions Code § 17044;

9.     A determination that Sanas engaged in unlawful and/or unfair business practices in violation of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*;

10.     Permanently enjoin Sanas from continuing the unlawful acts described above;

11.     Award Krisp damages as required by statute or, alternatively, restitution caused by Sanas' conduct; and

12.     Award any other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Krisp respectfully demands a trial by jury on all triable issues.

September 8, 2025                    Respectfully Submitted,

By: */s/ Chris R. Schmidt*

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice pending*)
eric.buresh@eriseip.com
Michelle L. Marriott (*pro hac vice pending*)
Michelle.marriott@eriseip.com
Chris R. Schmidt (Bar No. 298761)
chris.schmidt@eriseip.com
Nick Apel (*pro hac vice pending*)
Nick.apel@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Defendant*
*Krisp Technologies, Inc.*