ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Michelle L. Marriott (*pro hac vice*)
michelle.marriott@eriseip.com
Chris R. Schmidt (CSB 298761)
chris.schmidt@eriseip.com
Nick R. Apel (*pro hac vice*)
nick.apel@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

Phillip J. Haack (CSB 262060)
phaack@martonribera.com
MARTON RIBERA SCHUMANN &
CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel: (415) 360-2511

*Attorneys for Defendant*
*Krisp Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SANAS.AI INC., <br><br> Plaintiff, <br><br> vs. <br><br> KRISP TECHNOLOGIES, INC., <br><br> Defendant. | Case No.: 3:25-cv-05666-RS <br><br> **DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> **HEARING** <br><br> **DATE: NOVEMBER 20, 2025** <br> **TIME: 1:30 PM** <br> **COURTROOM: 3, 17 FLOOR** <br> **JUDGE: HONORABLE CHIEF DISTRICT JUDGE RICHARD SEEBORG** <br><br> **DEMAND FOR JURY TRIAL** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Civil Procedure 12(b)(6) Defendant Krisp Technologies, Inc. ("Defendant" or "Krisp") moves to dismiss the following Counts in Plaintiff Sanas.AI Inc.'s ("Plaintiff" or "Sanas") First Amended Complaint (Dkt. 35): Count Five for Declaratory Judgment of Co-Inventorship and Co-Ownership over U.S. Patent Nos. 12,205,609 and 12,223,979; Count Six for Misappropriation of Trade Secrets under Defend Trade Secrets Act; Count Seven for Misappropriation of Trade Secrets under California Uniform Trade Secrets Act; Count Ten for False Advertising under the Lanham Act; and Count Twelve for False Advertising under California False Advertising Law. A hearing for this Motion is noticed for Thursday November 20, 2025 at 1:30 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Chief District Judge Richard Seeborg for the Northern District of California located at Courtroom 3, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Fransisco, California. This motion is based upon this Notice, the supporting memorandum of points and authorities, all pleadings and papers on file in this action, and other matters as may be properly presented to the Court.

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................ 1

II.    **FACTUAL BACKGROUND** ............................................... 1

III.   **LEGAL STANDARD** ....................................................... 4

IV.   **THE COURT SHOULD DISMISS SANAS' TRADE SECRET CLAIMS** ................ 6

    A.   SANAS HAS NOT AND CANNOT PLEAD REASONABLE SECRECY MEASURES WHERE SANAS DID NOT DESIGNATE ANY "CONFIDENTIAL INFORMATION" VIA THE GOVERNING NDA. ................ 6

    B.   SANAS' ALLEGED CATEGORIES OF INFORMATION ARE NOT TRADE SECRETS. ............ 9

        1.   *Sanas discloses its alleged trade secrets in its own patents attached to the FAC.* ................ 10

        2.   *Sanas' alleged categories of information are not protectable as trade secrets.* ................ 11

            a)   Categories describing software functionality and performance are not protectable. ................ 11

            b)   Categories describing vague conceptual notions are not protectable. ................ 14

    C.   SANAS FAILS TO PLEAD INDEPENDENT ECONOMIC VALUE. ................ 16

V.    **THE COURT SHOULD DISMISS SANAS' CO-INVENTORSHIP AND CO-OWNERSHIP CLAIMS** ................ 17

VI.   **THE COURT SHOULD DISMISS SANAS' FALSE ADVERTISING CLAIMS.** ................ 19

    A.   SANAS FAILS TO ALLEGE ANY FALSE OR MISLEADING STATEMENTS OF FACT UNDER RULE 9(B). ................ 19

        1.   *The Blog Posts* ................ 19

        2.   *The Google Ads* ................ 20

    B.   SANAS HAS NOT PLEAD PLAUSIBLE INJURY AND CAUSATION. ................ 21

VII.  **CONCLUSION** ................................................................ 22

**Cases**

*Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*, No. CV1810187CJCADSX, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) ............................................................................ 16

*Agency Solutions.Com, LLC v. TriZetto Grp.*, Inc., 819 F. Supp. 2d 1001, 1016–19 (E.D. Cal. 2011) .......................................................................................................................................... 12, 13

*Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020) ......................... 4

*Amalfitano v. Google Inc.*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) ............................................................................................................................... 9, 16, 19

*Antaris Technologies Inc. v. Matthews*, No. 25-cv-04048-RS, 2025 WL 1939868, at *5–6 (N.D. Cal. July 15, 2025) ……………………………………………………………..…..….......14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................. 4

*Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000) ............................................ 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................. 4

*Blackhawk Network Inc. v. SL Card Co. Inc.*, 589 F. Supp. 3d 1115, 1127 (D. Ariz. 2022) …....17

*Bobbleheads.com, Ltd. Liab. Co. v. Wright Bros., Inc.,* 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) ………………………………………………………………………………………….22

*Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004 ……………18, 19

*Charlotte's Web, Inc. v. AAXLL Supply Co., LLC*, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020). …………………………………………………………………………………………22

*Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2019 WL 917056, at *3 (N.D. Cal. Feb. 25, 2019) ........................................................................................................................... 5

*Convolve, Inc. v. Compaq Computer Corp.*, 527 F. App'x 910, 925 (Fed. Cir. 2013) …. .6, 7, 8, 9

*DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793, at *4 (N.D. Cal. Aug. 1, 2020) …………………………………………………………………………… 21

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019) ………………………………………………………………….....5

*Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.*, No. 22-cv-07148-AMO, 2024 WL 1199018, at *4 (N.D. Cal. March 20, 2024) ................................................................................................. 5

*Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018)........... 6

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) ………………………………………….....14, 15

*Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504975, at *6 (N.D. Cal. Sept. 9, 2020) .................................................................................................... 5, 14, 15

*Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ……………………....9, 11

*Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 561 (N.D. Cal. 1999)................................ 7

*Gentil v. Wingfield GmbH*, No. 20-CV-05358-EMC, 2021 WL 4979427, at *6 (N.D. Cal. Mar. 2, 2021)……………………………………………………………………………………………...11

*Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 820 (N.D. Cal. 2021) …...8

*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014)…………………………10

*Kamath v. Itria Ventures, LLC*, 2024 WL 3408218 at *2 (N.D. Cal. July 11, 2024) …………...19

*Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 150 (D.D.C. 2009) …………………….20

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290 at *3 (N.D. Cal. Feb. 11, 2014) ……………………………………………………………………………………………...5

*LegalForce, Inc. v. LegalZoom.com, Inc.*, 2019 WL 1170779, at *2 (N.D. Cal. Mar. 13, 2019) 21

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ............................................................. 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 573 U.S. 118, 130, 133 (2014) ……….21

*Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024) …..………18

*Luxul Tech. Inc. v. Nextarlux, LLC*, 78 F. Supp. 3d 1156, 1172 (N.D. Cal. 2015) …………….20

*Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1006 (Fed. Cir. 2019)................................ 18

*Metricolor LLC v. L'Oreal S.A.*, No. CV 18-364-R, 2018 WL 5099496, at *5 (C.D. Cal. Aug. 15, 2018) ………………………………………………………………………………………….16

*Navigation Holdings LLC v. Molavi*, No. 19-CV-02644-LHK, 2020 WL 5074307, at *2 (N.D. Cal. Aug. 25, 2020).................................................................................................... 18

*Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) …………………….20

*Opternative, Inc. v. Jand, Inc.*, No. 17 CIV. 6936 (JFK), 2018 WL 3747171, at *9 (S.D.N.Y. Aug. 7, 2018) ....................................................................................................................18

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) ........................9

*Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756, 766 (N.D. Cal. 2024) .................................... 6

*Pro Mktg. Sales, Inc. v. Securion Sys., Inc.*, No. 1:19-CV-00113, 2020 WL 5912351, at *5 (D. Utah Oct. 6, 2020) .............................................................................................................17

*Roblox Corp. v. WowWee Grp. Ltd.*, 2024 WL 4051751 at *8 (N.D. Cal. Sept. 3, 2024)...........20

*RoadRunner Recycling, Inc. v. Recycle Track Sys.*, Inc., No. C 23-04804 WHA, 2023 WL 8936690, at *2 (N.D. Cal. Dec. 26, 2023) ......................................................... 4, 14, 15

*Salesbrain, Inc. v. AngelVision Techs.*, No. C 12-05026 LB, 2013 WL 1191236, at *12 (N.D. Cal. Mar. 21, 2013) .................................................................................................................7

*Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4–5 (N.D. Cal. June 14, 2012) ...........................................................................................11, 12, 13

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) .............5, 20

*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ................................................................................................................... 14, 15

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ........................................ 4

*Swanson v. Alza Corp.*, No. C 12-4579 PJH, 2015 WL 1304436, at *11 (N.D. Cal. Mar. 20, 2015). ........................................................................................................................ 18

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020) ...........................................................................................................................22

*Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5, n.3 (N.D. Cal. Apr. 13, 2015) .............................................................................12, 13, 14

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009)........................................................................................................... 5

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). ................................................................................................. 10, 14, 15

**Statutes**

18 U.S.C. § 1839(3)(B) ................................................................................................ 16

Cal. Civ. Code § 3426.1(d)(1)…………………………………………………………...…16

## I. INTRODUCTION

Plaintiff Sanas.AI Inc.'s First Amended Complaint ("FAC") is long on rhetoric but short on facts. Sanas attempts to salvage its claims by adding 60 pages of background narrative, but none of those allegations cure the deficiencies identified in Krisp Technologies, Inc.'s initial motion to dismiss (Dkt. 26). If anything, the amendments confirm that Sanas cannot state a plausible claim.

The FAC admits that Sanas failed to follow the parties' Non-Disclosure Agreement ("NDA"), **Ex. A**, NDA, which expressly required that information must be marked in writing to qualify as protectable "Confidential Information." Sanas did not provide Krisp with even a single piece of information that was protected under the NDA. Instead, Sanas describes "trade secrets" that consist of generalized engineering tradeoffs, well-known machine learning concepts, or information already disclosed in Sanas' own patents. It relies on vague and uncorroborated conversations to allege co-inventorship. And it dresses up standard marketing language as "false advertising" without ever explaining why the statements were allegedly false.

Sanas' amendments underscore that its claims are legally deficient, not just factually underdeveloped. Because Sanas has already amended once and has now confirmed that it cannot plead viable claims, the challenged claims should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

Sanas' FAC presents a touching story about the founding of Sanas. Dkt. 35, at ¶¶ 15–30. A few college students heard their friend had trouble being understood because of his accent and wanted to use a generic technology, artificial intelligence ("AI"), to help their friend. *Id.* They tried to partner with a successful company that already had a meaningful footprint in the voice productivity space, Krisp, to accelerate their business growth. *Id.* at ¶¶ 31–75.

But Krisp was already well into developing its own accent conversion technology and soon realized Sanas did not have a product that could meet Krisp's exacting quality standards. So Krisp decided to complete its own technology rather than partner with Sanas. *Id.* at ¶¶ 76–86. Now facing

competition from Krisp's superior quality product, Sanas turned to litigation. *See generally* Dkt. 35.

While Sanas' FAC attempts to claim trade secret misappropriation under federal and California law, there are giant holes in the story. *Id.* The FAC references an NDA the Parties entered at the beginning of discussions, but Sanas decided not to provide the actual NDA to the Court. *Id.* This is not surprising. The NDA, provided with this Motion, and which the Court may consider for purposes of this Motion, sinks Sanas' claims. **Ex. A**. The parties contemplated that, during discussions, there *might* be an exchange of "Confidential Information." **Ex. A**, at §§ 2–4. "Confidential Information" under the NDA is: (i) written information that is "marked 'Confidential,' 'Proprietary' or in some other manner to indicate its confidential nature;" or (ii) oral information that is "reduced to a written summary [] that is marked in a manner to indicate its confidential nature and delivered to the Recipient within thirty (30) days after its initial disclosure." *Id.* at § 2.A. Sanas does not factually allege even a single written designation of any "Confidential Information" under the NDA, despite being on notice of this fatal defect from the previous motion (Dkt. 26). *See generally* Dkt. 35. This is dispositive of Sanas' trade secret claims. Sanas' actions (or inaction) are not surprising because the same information that Sanas alleges as "trade secrets" in its FAC are public information, including by public disclosure in Sanas' own patents, Dkts. 35-1, 35-2, 35-3, 35-4; **Ex. B**, Sanas' Alleged Trade Secrets Disclosed in Sanas' Patents. In short, there were no "trade secrets" shared much less misappropriated.

The FAC goes on to allege that two of *Krisp's* patents, U.S. Patent Nos. 12,205,609 and 12,223,979 (the "'609 and '979 Patents"), should name *Sanas'* employees as inventors because it was allegedly Sanas' employees who invented key aspects of Krisp's patented inventions. Dkt. 35, at ¶¶ 217–24. These wild allegations fail to survive minimal scrutiny. Sanas alleges that "Sanas employees, including at least Maxim Serebryakov, disclosed details to Krisp regarding the manner in which Sanas' accent translation software was being developed based upon a teacher-student architecture; disclosures relating to how Sanas' product is optimized to run on personal computer CPUs; and that Sanas' product uses a parallel speech data processing model." *Id.* at ¶ 218. And

Sanas alleges that "[c]laims 1, 13, and 19 [of the '609 Patent] each [] include[] the limitations of a 'teacher machine learning (ML) model;' 'parallel speech data;' and 'a student machine learning algorithm[,]'" and "[c]laims 1, 12, and 19 [of the '979 Patent] each include[] the limitations of training a 'first machine learning model' and a 'second machine learning algorithm;' and the limitations of 'comparing a subset of a second plurality of parameters of the second machine learning model with a corresponding subset of the first plurality of parameters of the first machine learning model.'" *Id.* at ¶¶ 123–30, 219. Tellingly, there is no evidence (or pled facts) to corroborate Sanas' conclusory allegations. But even so, discussing the use of a teacher-student model and parallel speech processing in the context of speech processing is akin to discussing the use of a steering wheel and tires in the context of an automobile—they are generic, standard, and well-known. Amazingly, Sanas' FAC itself alleges these concepts were known in the art. *Id.* at ¶ 126. The Court may take judicial notice of the fact that the Patent Office expressly identified these concepts as well-known when determining that Krisp's inventions were patentable. **Ex. C**, '609 Patent's Notice of Allowance. Discussing known concepts is not an act of inventorship. Krisp's team members put in the hard work to develop technology far superior to the previously known state of the art, and they are the sole inventors of Krisp's patented inventions.

The FAC further alleges that Krisp "published and continues to publish . . . false and misleading statements" in three of its blog posts: the "2025 ACC Blog Post" published on April 21, 2025; the "2024 NCC Blog Post" posted on August 30, 2024; and the "2025 NCC Blog Post" posted on July 22, 2025 (collectively, the "Blog Posts"). Dkt. 35, at ¶¶ 91, 104. While Sanas provides lists of statements from the Blog Posts it believes are "false and misleading," (*Id.* at ¶¶ 93, 105, 107), Sanas pleads no evidence or facts to show how and why the statements are purportedly "false and misleading." Instead, the FAC alleges Sanas wrote Krisp a cease and desist letter on August 28, 2025 regarding the false and misleading statements in the 2025 ACC Blog Post and another cease and desist letter on September 12, 2025 "which set forth the bases for Sanas' claims of false advertising . . . contained in [the blog posts]." *Id.* at ¶¶ 92, 100, 121. The FAC alleges, "as a result of Krisp's false advertising," "Sanas has suffered and will continue to

suffer damage to its business reputation and goodwill," "lost and will continue to lose sales, revenue, customers, and market share," and "has suffered and will continue to suffer reputational harm." *Id*. at ¶¶ 274–76. Tellingly, the FAC provides no more than these barebone allegations and forces the Court to connect the dots that Sanas' injuries are due to Krisp's alleged false advertising. Interestingly, the FAC states, "Sanas has won rapid adoption in the market and praise from its customers . . . and has been used by thousands of customers." *Id*. at ¶ 5. In fact, Sanas labels itself as a "recognized market leader." *Id*. Thus, it appears Sanas is thriving and has not suffered any injury, let alone injury from the Blog Posts.

## III.    <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In determining a motion to dismiss, "[t]he court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* "In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

<u>Trade Secrets</u>. "District courts analyze DTSA and CUTSA's pleading requirements together." *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020). "[T]o succeed on a claim for trade-secret misappropriation under the DTSA and CUTSA, a plaintiff must show that it possessed a trade secret, that a defendant misappropriated the trade secret, and that misappropriation caused or threatened damage to the plaintiff." *RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc.*, No. C 23-04804 WHA, 2023 WL 8936690, at *2 (N.D. Cal. Dec. 26, 2023) (internal citations omitted). "Both the DTSA and the CUTSA define a trade secret as information that (1) derives its economic value from not being generally known, and (2) is subject

to reasonable measures of secrecy by its owner." *Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2019 WL 917056, at *3 (N.D. Cal. Feb. 25, 2019). "To survive a motion to dismiss, '[t]he trade secret must be described "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."'" *Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504975, at *6 (N.D. Cal. Sept. 9, 2020) (internal citations omitted).

Inventorship. "The inventors named in an issued patent are presumed correct[.]" *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009). To plead a correction of inventorship claim for nonjoinder, a plaintiff must allege facts from which a court can infer: (1) the plaintiff "made a more-than-insignificant contribution to the conception of at least one claim[;]" and (2) "there was some element of joint behavior[.]" *Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.*, No. 22-cv-07148-AMO, 2024 WL 1199018, at *4 (N.D. Cal. March 20, 2024).

False Advertising. To assert a false advertising claim under the Lanham Act, a party must plausibly allege: (1) a false or misleading statement of fact; (2) in interstate commerce; (3) that is used in a commercial advertisement or promotion; (4) that deceives or is likely to deceive in a material way; and (5) has caused or is likely to cause competitive or commercial injury to the plaintiff. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Courts in this Circuit have concluded that "Lanham Act false advertising claims must meet the Rule 9(b) particularity pleading requirements." *Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019). Further, "[i]n the Ninth Circuit, claims of . . . false advertising under California False Advertising Law are substantially congruent to claims made under the Lanham Act." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290 at *3 (N.D. Cal. Feb. 11, 2014) (stating the analysis for the separate false advertising claims are the same).

## IV.  THE COURT SHOULD DISMISS SANAS' TRADE SECRET CLAIMS

The Court should dismiss Sanas' trade secret claims because Sanas cannot plead reasonable secrecy measures, the alleged categories of information are not trade secrets, and Sanas pleads no independent economic value.

### A.  Sanas has not and cannot plead reasonable secrecy measures where Sanas did not designate any "Confidential Information" via the governing NDA.

Sanas' trade secret claims rest on the assertion that it disclosed confidential information to Krisp during discussions under the parties' NDA. Yet the NDA expressly required Sanas to designate any information it considered confidential in writing to constitute "Confidential Information." **Ex. A**, at § 2. The FAC contends that Sanas provided information orally, in meetings, and via Slack, but concedes any such disclosure was without the required written designation of confidentiality. Courts dismiss trade secret claims where the plaintiff failed to comply with contractual confidentiality requirements. *See, e.g.*, *Convolve, Inc. v. Compaq Computer Corp.*, 527 F. App'x 910, 925 (Fed. Cir. 2013) (disclosure without required designations defeated secrecy). Sanas cannot now rewrite the NDA or retroactively recharacterize its voluntary, undesignated disclosures as "trade secrets." Sanas' trade secret claims fall under the sword of Sanas' own NDA.

As a preliminary matter, the NDA is incorporated by reference into the FAC because it is referenced extensively, forms the basis of Sanas' trade secret claims, and its authenticity is not in dispute. Dkt. 35, at ¶¶ 39–44, 48, 53, 59–61, 65, 79, 84, 227; *Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756, 766 (N.D. Cal. 2024). "The purpose of the incorporation by reference doctrine is to prevent plaintiffs from surviving a 12(b)(6) motion by deliberately omitting documents in their complaint." *Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018). Importantly, "[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).

To be protected "Confidential Information," Sanas' NDA unambiguously requires: (i) written information to be "marked 'Confidential,' 'Proprietary' or in some other manner to indicate

its confidential nature;" or (ii) oral information to be "reduced to a written summary [] that is marked in a manner to indicate its confidential nature[.]" **Ex. A**, at § 2.A. Sanas does not plead compliance with either condition. *See generally* Dkt. 35. Accordingly, no information disclosed by Sanas triggered any duty of confidentiality under the NDA. **Ex. A**, at §§ 3–4 (only providing protection for "Confidential Information"); *Convolve*, 527 F. App'x at 925 (finding "the 'circumstances' giving rise to a duty to maintain the secrecy of the disclosed information is dictated by the terms of the NDA" and that by "not follow[ing] the procedures set forth in the NDA to protect the shared information," the defendant's duty to maintain secrecy never arose as to information that was not sent in compliance with the NDA).

Sanas cannot cure this defect because the NDA unambiguously and expressly provides that no trade secret obligations exist outside the governing NDA: "Recipient **shall not have any obligation, express or implied by law, with respect to** <u>trade secret</u> **or proprietary information** of Discloser disclosed under this Agreement **except as set forth herein**." **Ex. A**, at § 14 (emphasis added). Accordingly, no other allegations can plead the existence of reasonable secrecy measures. *See Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 561 (N.D. Cal. 1999) ("Gemisys' attempt to restrict its own employees' access to PMIS is not enough to counter the fact that Gemisys disclosed its allegedly trade secret material to Phoenix and others of its licensees without imposing a duty of confidentiality upon them or their employees."). Here, there can be no reasonable secrecy measures because Sanas did not invoke the protections of the NDA, and the NDA clearly states it provides the only obligations for trade secrets.

This is fatal to Sanas' trade secret claim. There is no way around the NDA, which is the sole controlling document and makes clear that it is the "entire agreement" between the Parties, that it "supersedes all prior written an oral agreements," cannot be waived "except by a writing executed by the Party against whom the waiver is to be effective," and cannot be modified unless "by a writing signed by the Parties." **Ex. A**, at § 14. Accordingly, Sanas also cannot plead waiver or modification of the NDA (or any particular provision) in this case absent signed, written confirmation of such. *Salesbrain, Inc. v. AngelVision Techs.*, No. C 12-05026 LB, 2013 WL

1191236, at *12 (N.D. Cal. Mar. 21, 2013) ("Where the terms of the contract are unambiguous, a court must enforce the contract according to its plain meaning.").

Nothing newly alleged in Sanas' FAC changes this result because Sanas still does not (and cannot) allege that it ever complied with the simple marking requirement necessary to designate information as "Confidential Information." Sanas merely quotes selected portions of the NDA which do not override (or make ambiguous) the express marking requirement and express provision removing all trade secret obligations outside the NDA. Dkt. 35, at ¶¶ 41–43. The NDA specifically required that a party mark or designate—***in writing***—information that it desired to protect as "Confidential" to avoid years-later generic trade secret allegations based on Sanas' say-so that everything was "under the NDA" or "subject to the NDA." *Id.* at ¶¶ 44, 53, 59. Sanas' remaining allegations are entirely irrelevant. Sanas points to a "Letter of Intent" between the parties, but that document is not only unexecuted and makes no mention of trade secrets or confidential obligations, but it expressly "does not create or constitute any legally binding or enforceable obligations or liabilities between the parties." **Ex. D**, Unsigned Letter of Intent;[1] Dkt. 35, at ¶¶ 51–54. Equally irrelevant are Sanas' complaints that it "sought heightened protections" that were not granted by Krisp (Dkt. 35, at ¶¶ 54, 59) and its references to a "Slack channel" that, likewise, never contained anything marked as "Confidential Information" (*Id.* at ¶ 53).

Sanas' allegation that it subjectively believed everything would be protected as confidential under the NDA (*Id.* at ¶¶ 53, 59–60, 65) is legally implausible and expressly defeated by the contract between Sanas and Krisp: the NDA. The NDA "supersedes all prior written and oral agreements between the Parties," and cannot be modified "except by a writing signed by the Parties to the Agreement." **Ex A**, at § 14. Moreover, California contract law is clear that "the subjective intent of one of the parties is not indicative of the mutual intent of both parties." *Convolve*, 527 F. App'x at 924; *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 820 (N.D. Cal.

---

[1] To the extent the "letter of intent" is relied on, it is therefore incorporated by reference into the FAC (*Pirani*, 710 F. Supp. 3d at 766).

2021) ("California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.").

The NDA is the controlling document, and it defeats Sanas' trade secret claims in their entirety. There is no gray area, because "a written non-disclosure agreement supplants any implied duty of confidentiality that may have existed between the parties." *Convolve*, 527 F. App'x at 923–25 (analyzing CUTSA claims and an NDA under California law, and rejecting an argument that "regardless of whether the confidentiality of the trade secrets was confirmed in writing [] the parties understood their mutual disclosures were confidential, notwithstanding the NDA strictures" because such interpretation was "unreasonable and would render paragraph 7 of the NDA a dead letter."). The Court should dismiss Sanas' trade secret claims with prejudice because any further amendment in this case would be futile. *Amalfitano v. Google Inc.*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) (leave to amend need not be granted if amendment would be futile).

### B.  Sanas' alleged categories of information are not trade secrets.

Even setting the NDA aside, Sanas' alleged "trade secrets" are not protectable. The FAC cites concepts such as "CPU utilization," "end-to-end latency," "teacher-student architecture," and "parallel speech data processing." Such concepts are matters of general knowledge in the machine learning and speech processing fields. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (no trade secret protection for information generally known). Many of the alleged "secrets" also appear in Sanas' own patent filings, which by definition are public disclosures. *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (holding patent publication destroys secrecy). A party cannot claim as a trade secret information what it chose to disclose publicly in patents.

Sanas identifies the following broad categories of information as purported trade secrets:

- "Real world performance indicators of Sanas' developed accent translation software, including for example:

- CPU utilization;
  - End-to-end latency on call-center platforms;
  - Performance in noisy environments;
  - Performance of the software using different types of microphones;
  - Performance of the software in strong and no accent cases;
  - Performance with high speaking rates; and
  - Robustness to laughter;
- Challenges with accent translation software that Sanas had identified as areas of focus for the deployment of development resources, including for example relating to:
  - Performance in noisy environments;
  - Performance problems created by certain types of input sounds;
- Whether Sanas preprocesses audio;
- Approaches for evaluating voice quality, acoustic quality, intelligibility, and accentedness of speech;
- Specific algorithm design tradeoffs;
- Sanas' development of a teacher-student architecture;
- That Sanas' product runs locally on a personal computer CPU; and
- Sanas' use of a parallel speech data processing model."

Dkt. 35, at ¶ 67.[2] These categories of information are not trade secrets because: (1) Sanas shared the same information in its own patents; and (2) they are types of information California courts routinely reject as trade secrets.

### 1. Sanas discloses its alleged trade secrets in its own patents attached to the FAC.

Sanas' alleged categories of information are not trade secrets because they are disclosed publicly—by Sanas itself—in the asserted patents attached to the FAC. Attached as **Exhibit B** to this Motion is a chart demonstrating where Sanas' alleged trade secrets are publicly disclosed in Sanas' own patents. **Ex. B** (citing Dkts. 35-1, 35-2, 35-3, 35-4); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ("In reviewing the sufficiency of a complaint, we limit

---

[2] Krisp assumes Paragraph 67 constitutes Plaintiff's attempt to identify its alleged trade secrets because Paragraph 67 is the only paragraph which lists the alleged "information disclosed." To the extent Sanas contends the identity of its alleged trade secrets lies outside Paragraph 67, such style of hidden pleading fails to permit Krisp "to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

ourselves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.").

"It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000). If the alleged disclosed information is secret, Sanas seems to have missed the memo—it didn't protect the information as confidential under the NDA (*supra* Section IV.A), and it publicly disclosed the same information in its patents (**Ex. B**). Accordingly, Krisp respectfully requests that the Court dismiss Sanas' DTSA and CUTSA claims with prejudice. *Gentil v. Wingfield GmbH*, No. 20-CV-05358-EMC, 2021 WL 4979427, at *6 (N.D. Cal. Mar. 2, 2021) ("Dismissal of the trade secret claim as it relates to the In/Out product is with prejudice because the product was sold to the public and disclosed in a utility patent.").

### 2. Sanas' alleged categories of information are not protectable as trade secrets.

Even if Sanas had treated the allegedly disclosed information as secret (it did not), it is not the type of information that is protectable under the DTSA and CUTSA.

#### a) Categories describing software functionality and performance are not protectable.

Sanas' alleged categories merely purport to describe the "real world" operating functionality and performance of Sanas' software. This description is self-defeating. Information discernable in the "real world" is not secret. Courts routinely reject this type of high-level, "real world" information as trade secret because such are "evident to anyone running the finished program." *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4–5 (N.D. Cal. June 14, 2012).

For example, the Northern District of California found the following identification of alleged trade secrets insufficient: "'server architecture'—as including 'memory utilization, storage utilization, server synchronization, scalability of all resources (including memory, network bandwidth, storage devices and CPU), operating system type, scripting engine, the number of servers, server functions and the ability and server architecture for multiple users to execute and

save game functions in real time[.]" *Soc. Apps*, 2012 WL 2203063, at *4. Similarly, this Court found that the following alleged information insufficient: "the manner in which [a] feature was developed and implemented, the strategy behind it, [and] the operation of this feature[.]" *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5, n.3 (N.D. Cal. Apr. 13, 2015) (granting motion to dismiss).

Additionally, the Eastern District of California found the following types of information insufficient for trade secrets: "conceptual notions that determine how [an] interface or its related programs will work[;]," "[p]lans, flows, inputs, outputs, rules of operation, priorities of operation, and the like[;]" "high level design specifications that are incorporated into software[;]" "insight, knowledge and know-how acquired by an insider to a particular trade[;]" "information that is reflected in the way software functions[;]" and "information that lead[s] to the incorporation of [program] functionality[.]" *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1016–19 (E.D. Cal. 2011). In sum, "descriptions of the design and function features of software are not information within the definition of California's UTSA, even where a particular design or functional element may be unique to that software." *Id.* at 1021.

Here, each of Sanas' alleged trade secrets is directed to an unprotectable idea or function: real world performance indicators (e.g., impermissible information evident to anyone running program, server architecture, memory utilization, resource scalability, operation of a feature, and information reflected in the way software operates); challenges identified for software development (e.g., impermissible information regarding the manner in which a feature was developed/strategy behind it, plans, flows, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program); whether Sanas preprocesses audio (e.g., impermissible server architecture, server functions, operation of a feature, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program), approaches for evaluating speech data (e.g., impermissible manner in which a feature was developed/strategy behind it, plans, flows, design specifications incorporated in software, insight/knowledge/know-how, and information that leads

to functionality of program); algorithm design tradeoffs (same); developing a student-teacher architecture (e.g., impermissible server architecture, manner in which a feature was developed/strategy behind it, plans, flows, design specifications incorporated in software, insight/knowledge/know-how, and information that leads to functionality of program); running on a personal computer (e.g., impermissible information evident to anyone running program, server architecture, memory utilization, resource scalability, operation of a feature, design specifications incorporated in software, insight/knowledge/know-how, information that is reflected in the way software functions); using parallel data processing (same). *Soc. Apps*, 2012 WL 2203063, at *4–5; *Top Agent*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5; *Agency Solutions.Com*, 819 F. Supp. 2d at 1016–19.

Nothing newly alleged in Sanas' FAC transforms its impermissible categories into legally protectable trade secrets. In fact, the newly added allegations further cement that the alleged categories of information are *not* trade secrets. For example, Sanas attempts to elaborate on its "end to end latency with different call center platforms" category but does nothing more than acknowledge that such is the real functionality of Sanas' operable software. Dkt. 35, at ¶ 70. This is still impermissible information evident to anyone running program, server architecture, memory utilization, resource scalability, operation of a feature, and information reflected in the way software operates. *Soc. Apps*, 2012 WL 2203063, at *4–5; *Top Agent*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5; *Agency Solutions.Com*, 819 F. Supp. 2d at 1016–19. Regarding Sanas' alleged "CPU utilization" category, Sanas concedes the publicly ascertainable nature of such by specifically stating that Sanas was able to discern Krisp's CPU utilization through testing. Dkt. 35, at ¶ 118 ("Sanas has conducted its own internal testing of CPU utilization against Krisp's noise cancellation solution, and the results reflect that CPU utilization with Sanas' noise cancellation product is comparable to Krisp's"). Sanas goes on to elaborate that the alleged trade secret information comprised "lessons learned" which "led Sanas to adapt its approach[.]" Dkt. 35, at ¶ 72. This is clearly impermissible know-how, information that leads to incorporation of functionality, and the manner of development/strategy behind it courts reject. *Agency*

*Solutions.Com*, 819 F. Supp. 2d at 1016–19; *Top Agent Network*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4–5, n.3.

<blockquote>

### b) Categories describing vague conceptual notions are not protectable.

</blockquote>

Second, courts routinely reject broad conceptual notions—including generic AI concepts—as trade secrets.

"[A]llegations that set out 'purported trade secrets in broad, categorical terms' that are merely 'descriptive of the types of information that generally *may* qualify as protectable trade secrets' are insufficient to state a claim." *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) (emphasis in original). Examples of such insufficient descriptions include: "source code, . . . strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of [] software, including ideas and plans for product enhancements" (*Vendavo*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3); "data on the environment [and] data on the propagation of radio signals" (*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)); "product composition" (*Five Star*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7); and "analysis of [a] system" (*Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6). Additionally, generic artificial intelligence (AI) terminology is not trade secret. *RoadRunner*, No. C 23-04804 WHA, 2023 WL 8936690, at *3 ("to the extent RoadRunner alleges that its 'AI system' is a trade secret . . . [such] is inadequate. . . . To hold otherwise would be to allow anyone to throw around terms like 'AI' and receive trade-secret protection without clarifying what the trade secret even is"). For example in *Antaris Technologies Inc. v. Matthews*, this Court dismissed CUTSA and DTSA claims because the plaintiff "refer[red] to mere broad categories of information that *potentially* or *generally* may be subject to trade secret protection," such as "[plaintiff's] software architecture, current feature set, [] development pipeline and processes . . . the software feature preferences,

[and] business requirements[.]" No. 25-cv-04048-RS, 2025 WL 1939868, at *5–6 (N.D. Cal. July 15, 2025) (granting motion to dismiss).

Each of Sanas' alleged categories can accurately be aligned with these insufficient categories that courts reject as trade secrets: performance indicators of Sanas' software (e.g., impermissible data on the environment/signals, product composition, and analysis of a system); identified challenges for development (e.g., impermissible strategic business development initiatives, negative knowhow learned through the course of research and development, and other information related to the development of software including ideas and plans for product enhancements); and other non-specific aspects of how Sanas' software operates (e.g., impermissible negative knowhow learned through the course of research and development, other information related to the development of software, including ideas and plans for product enhancements, data on the environment/signals, product composition, and analysis of a system). *Vendavo*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3; *Space Data Corp.*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2; *Five Star*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7; *Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6.

And each of Sanas' alleged categories directed to boilerplate AI concepts is further insufficient, for example: preprocessing audio; teacher-student; and parallel data processing models. *RoadRunner*, No. C 23-04804 WHA, 2023 WL 8936690, at *3; *see also* Dkt. 10, at ¶¶ 2, 17, 19, 51 (Plaintiff explaining its core technology is AI and that its "goal was straight forward: to use artificial intelligence"). Sanas further alleges that: "Sanas disclosed to Krips that it deployed a unique and proprietary algorithm" (Dkt. 35, at ¶ 68); "Sanas further shared specific information" (Dkt. 35, at ¶ 69); and "Sanas provided nonpublic information regarding its ideal latency period" (Dkt. 35, at ¶ 70). However, adding a pile on conclusory buzzwords only multiplies the same insufficiency. Such pleading is inadequate. *Vendavo*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3; *Space Data Corp.*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2; *Five Star*, No. 19-CV-05611-PJH, 2020 WL 513287, at *7; *Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6.

"Because Plaintiff does not allege a trade secret, and the information in [Plaintiff's] Patent[s] cannot be protected as a trade secret, Plaintiff's claim fails." *Metricolor LLC v. L'Oreal S.A.*, No. CV 18-364-R, 2018 WL 5099496, at *5 (C.D. Cal. Aug. 15, 2018) (granting motion to dismiss). Dismissal with prejudice is particularly warranted here because Sanas was on notice of these defects from Krips's prior motion to dismiss (Dkt. 26), amended its complaint in lieu of responding to said motion, and still cannot come close to alleging a plausible trade secret claim. *Amalfitano*, No. 14-CV-00673-BLF, 2015 WL 456646, at *3.

### C. Sanas fails to plead independent economic value.

To state a trade secret claim, a plaintiff must allege not only specific trade secrets and secrecy but also independent economic value from not being generally known. 18 U.S.C. § 1839(3)(B); Cal, Civ. Code § 3426.1(d)(1). The FAC asserts in conclusory fashion that Krisp "leapfrogged years" of development by learning of Sanas' "ideal latency" period and "CPU utilization benchmarks." Dkt. 35, at ¶ 70. But the FAC identifies no facts showing Krisp incorporated any Sanas-specific information into its products, much less that this alleged information had independent economic value not already available from public sources. Such conclusory allegations are insufficient under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (rejecting "naked assertions devoid of further factual enhancement"). Accordingly, the trade secret claims should be dismissed for this reason as well. *Flexpand*, No. C 19-0878 SBA, 2020 WL 13504975, at *6 ("CREAM fails to allege any facts . . . demonstrating how the purported trade secrets have independent economic value from being secret. . . . The Court thus finds that CREAM has failed to adequately identify an actionable trade secret."); *Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*, No. CV1810187CJCADSX, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (dismissing trade secret claim where plaintiff did not plead any economic value allegations beyond "invest[ing] time, capital and expertise in developing its trade secrets and other confidential, proprietary business information and in the developments of its bulk of business which is not information generally known to those in the industry.").

## V. THE COURT SHOULD DISMISS SANAS' CO-INVENTORSHIP AND CO-OWNERSHIP CLAIMS

The fact that Sanas did not tell Krisp anything inventive is readily apparent from the allegations in the FAC. Sanas' inventorship claims fail because the FAC rests on threadbare allegations, which are entirely conclusory and unsupported by the law. *Iqbal*, 556 U.S. at 678. Specifically, Sanas fails to plead nonconclusory facts about which employees jointly invented which concepts with Krisp's inventors, or facts to support the element of corroboration. Additionally, the only alleged contributions Sanas can identify are well-known concepts in the art and thus insufficient for inventorship.

"[B]ecause 'the inventors as named in an issued patent are presumed to be correct,' [] the party 'alleging misjoinder or non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence and must provide evidence to corroborate the alleged joint inventor's conception' and collaboration with the named inventors." *Blackhawk Network Inc. v. SL Card Co. Inc.*, 589 F. Supp. 3d 1115, 1127 (D. Ariz. 2022); *see also Pro Mktg. Sales, Inc. v. Securion Sys., Inc.*, No. 1:19-CV-00113, 2020 WL 5912351, at *5 (D. Utah Oct. 6, 2020) ("allegations offered in support of co-inventorship require corroboration of both the alleged co-inventor's conception and the communication thereof to the established inventor. [W]hen assessing plausibility of an alleged contribution, pleadings that contain conclusory and vague statements will not suffice.") (internal citations omitted). Courts strictly apply this requirement to prevent speculative, weak, after-the-fact challenges to inventorship.

Sanas' FAC relies on conclusory and vague allegations that "Sanas employees, including at least Maxim Serebryakov" disclosed generic concepts to Krisp that were later incorporated into Krisp's '609 and '979 Patents. Dkt. 35, at ¶¶ 218–20. However, Sanas FAC fails to identify any employees' specific contribution and provides no more than conclusory allegations of corroboration. *See, e.g.*, Dkt. 35, at ¶ 131 ("at least some for the information that Mr. Serebryakov and other Sanas employees provided to Krisp [] is reflected in notes, emails, internal memorandum, text messages, or other documents"). This is wholly insufficient to plausibly allege a correction of

inventorship claim. *Blackhawk*, 589 F. Supp. 3d at 1127 ("Although the Second Amended Complaint contains the general allegation that one or more Blackhawk employees contributed to QuickTicket's invention, it fails to specifically identify any employee's purported contribution or describe the manner in which any employee 'worked collaboratively' with Giunti to develop QuickTicket."); *Opternative, Inc. v. Jand, Inc.*, No. 17 CIV. 6936 (JFK), 2018 WL 3747171, at *9 (S.D.N.Y. Aug. 7, 2018) (dismissing inventorship pleadings that contained only "conclusory and vague statements," did not identify a "specific contribution," and lacked "sufficient corroborating evidence").

Further, the only alleged contributions Sanas can muster in its FAC are generic concepts known in the art, such as "teacher machine (ML) mode," "parallel speech data," and "student machine learning algorithm." Dkt. 35, at ¶ 129. These are not inventive contributions because they merely represent the well-known state of the art, which predates both Sanas and Krisp. "[A] person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known [in] the current state of the art." *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004). Indeed, courts routinely find alleged contributions insufficient where such alleged contributions were known in the art. *Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1006 (Fed. Cir. 2019); *Swanson v. Alza Corp.*, No. C 12-4579 PJH, 2015 WL 1304436, at *11 (N.D. Cal. Mar. 20, 2015). Sanas' FAC concedes this point by affirmatively alleging that the concepts in Krisp's '609 and '979 Patents were "known in the art." Dkt. 35, at ¶ 126. And further, the Notice of Allowance for the '609 Patent—which is properly subject to judicial notice[3] — confirms that such general concepts (as opposed to the specifically claimed inventive combinations in Krisp's '609 and '979 Patents) were known in the art. **Ex. C**, '609 Patent's Notice of Allowance,

---

[3] *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024) ("Courts may [] take judicial notice of documents issued by the PTO, including a patent's prosecution history."); *Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644-LHK, 2020 WL 5074307, at *2 (N.D. Cal. Aug. 25, 2020) (The Court "may look beyond the plaintiff's complaint to matters of public record without converting the Rule 12(b)(6) motion into a motion for summary judgment[.]").

at 6–10 (identifying that the prior art overcome by Krisp disclosed general concepts such as a "student model," "teach[er] model," processing "data . . . in parallel," and related "algorithms," among others). Notably, Sanas does not allege that its employees conceived of any specific combination of claim terms, such as the combinations the Patent Office determined were patentable. Instead, Sanas merely points to generic, known concepts on their own. Alleging disclosure of long-known, general ideas is not inventive and does not support naming Sanas' employees joint inventors on Krisp's '609 and '979 Patents. *Caterpillar*, 387 F.3d at 1377.

In summary, the Court should dismiss Sanas' claim of co-inventorship (and associated claim of co-ownership) with prejudice because Sanas cannot plead facts to support specific contributions by specific employees with the requisite corroboration, and, in any event, Sanas' alleged contributions do not come close to inventive concepts. *Amalfitano*, No. 14-CV-00673-BLF, 2015 WL 456646, at \*3.

## VI.  THE COURT SHOULD DISMISS SANAS' FALSE ADVERTISING CLAIMS

The Court should dismiss Sanas' false advertising claims because Sanas fails to plead with particularity that Krisp made any false or misleading statements of fact or sufficiently plead that Sanas has been or is likely to be injured by the alleged false advertising.

### A.  Sanas fails to allege any false or misleading statements of fact under Rule 9(b).

#### 1.  The Blog Posts

Sanas flippantly alleges that Krisp's blog posts contain "false and misleading" statements. This is a serious allegation of falsehood that the law requires to be pled with particularity and specificity under Rule 9(b). Under the heightened standard, Sanas is required to plead "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation," and "must set forth what is false or misleading about a statement, ***and why it is false***." *Kamath v. Itria Ventures, LLC*, 2024 WL 3408218 at \*2 (N.D. Cal. July 11, 2024) (emphasis added). Yet, Sanas does not even attempt to explain "what is false or misleading about a statement, and why it is false." Stating that "Krisp published and continues to publish at least the following false and misleading statements" does not cut it when such harmful allegations are being

recklessly thrust forward. Dkt. 35, at ¶¶ 93, 105, 107. *Luxul Tech. Inc. v. Nextarlux, LLC*, 78 F. Supp. 3d 1156, 1172 (N.D. Cal. 2015) (dismissing Lanham Act claim for false advertising where allegations were "bare recitations of the elements of a false advertising claim, bereft of any factual allegations").

Compounding the issue, Sanas does not (and cannot) allege the statements were false or misleading at the time they were made. "Whether statements were false or misleading is measured at the time the statements were made." *Roblox Corp. v. WowWee Grp. Ltd.*, 2024 WL 4051751 at *8 (N.D. Cal. Sept. 3, 2024); *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008). Sanas never even alleges that any statements were "false and misleading" at the time they were made. To the contrary, Sanas acknowledges that "Krisp claims that the statements were 'accurate at the time they were made based on publicly available information.'" Dkt. 35, at ¶ 101. This is akin to saying the statement "Today's date is October 6" when made on October 6 is a false statement on October 7. Such weak assertions are legally deficient to state a claim for false advertising. *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 150 (D.D.C. 2009) (holding false advertising statements "must be judged at the time made and as the statements at issue were true at the time made, [Plaintiff's] claim fails as a matter of law").

### 2. The Google Ads

Sanas also claims that Krisp purchased Google ads that contains the "false and misleading statement" that "Krisp is a 'Better Sanas AI alternative.'" Dkt. 35, at ¶ 99. Such marketing statements are non-actionable puffery—vague, subjective, and incapable of objective verification. Courts consistently dismiss Lanham Act claims based on similar promotional terms. *Cullen v. Netflix*, 880 F. Supp. 2d 1017, 1026 (N.D. Cal. 2012) ("Vague or highly subjective claims about product superiority amount to non-actionable puffery; only 'misdescriptions of specific or absolute characteristics of a product are actionable.'") (quoting *Southland Sod Farms*, 108 F.3d at 1145).

## B. Sanas has not plead plausible injury and causation.

Sanas also fails to plead a cognizable injury caused by Krisp's alleged statements. A plaintiff suing under the Lanham Act must satisfy "the zone-of-interest test" and "the proximate-cause requirement." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 573 U.S. 118, 130, 133 (2014). To "come within the zone of interest," a plaintiff must plead "injury to a commercial interest in reputation or sales." *Id*. at 131–32. And for this injury to be proximately caused by the challenged statement, the injury must "flow[] directly from the deception wrought by the defendant's advertising." *Id*. at 133. Sanas has not satisfied either.

First, Sanas has pled nothing but conclusory assertions that it has and will "suffer damage to its business reputation and goodwill," "lose sales, revenue, customers, and market share," and "suffer reputational harm." Dkt. 35, at ¶¶ 274, 275, 276. Such alleged injuries "still require sufficiently detailed allegations." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793, at *4 (N.D. Cal. Aug. 1, 2020) (dismissing Lanham Act claim); *LegalForce, Inc. v. LegalZoom.com, Inc.*, 2019 WL 1170779, at *2 (N.D. Cal. Mar. 13, 2019) (dismissing as conclusory and insufficient a plaintiff's allegations of "lost revenue and market share, reduced asset value[,] increased advertising costs, [and] damage to its business, reputation, and goodwill" without pleading a relevant timeframe or sufficient facts regarding causation). On the other hand, Sanas gloats that its technology "has won rapid adoption in the market and praise from its customers," and "has been used by tens of thousands of customers . . . and has rapidly become the recognized market leader." Dkt. 35, at ¶ 5. A plaintiff cannot plausibly claim both market dominance and injury from a competitor's marketing puffery.

Second, Sanas fails to allege sufficient facts to support that Krisp's alleged statements proximately caused the various types of injuries—i.e., that the alleged "deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Instead of "connecting the dots," the Complaint conclusorily alleges, without supporting allegations, that Krisp's purported false advertising must have caused Sanas "to suffer damage to its business reputation and goodwill," "to lose sales, revenue, customers, and market share," and "to suffer reputational

harm." Dkt. 35, at ¶¶ 274, 275, 276. "Such an artificial and attenuated link between Defendant's purported false advertising and Plaintiff's harm, inter alia, defies the reality of business." *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020). "[T]here could be any number of intervening reasons for why [Sanas'] sales decreased, including new market entrants, increased . . . regulation, a reduction of consumers' discretionary income, or even a change in consumer preferences." *Charlotte's Web, Inc. v. AAXLL Supply Co., LLC*, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020). Sanas' vague Complaint and speculative allegations do not show Krisp's allegedly false and misleading statements caused its harm any more than one of these reasons could have. *Id.*

Similarly, in *Bobbleheads.com, Ltd. Liab. Co. v. Wright Bros., Inc.*, the mere allegation that the defendant's false advertising was causing damages, without more, was insufficient to show proximate cause for Lanham Act standing. 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (dismissing false advertising claim under the Lanham Act for lack of statutory standing). Here, like in *Bobbleheads.com*, Sanas provides barebone allegations of injuries without more and forces the Court to "connect the dots" between the alleged false advertising and Sanas' injuries. Sanas' allegations of injury are thus far too remote and speculative to maintain standing under the Lanham Act. Lastly, because Lanham claims and California claims for false advertising are analyzed the same, Sanas' California False Advertising claim fails for the reasons.

## VII. **CONCLUSION**

For the foregoing reasons, Krisp respectfully requests the Court dismiss Sanas' trade secret, co-inventorship/co-ownership, and false advertising claims with prejudice.

October 6, 2025

Respectfully Submitted,

By: */s/ Eric Buresh*

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Michelle L. Marriott (*pro hac vice*)
Michelle.marriott@eriseip.com
Chris R. Schmidt (CSB 298761)
chris.schmidt@eriseip.com
Nick Apel (*pro hac vice*)
Nick.apel@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Defendant Krisp Technologies, Inc.*