UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SANAS.AI INC.,

          Plaintiff,

      v.

KRISP TECHNOLOGIES, INC.,

          Defendant.

Case No. 25-cv-05666-RS   (KAW)

**ORDER RE 4/28/2026 DISCOVERY LETTER, 5/8/2026 DISCOVERY LETTERS**

Re: Dkt. Nos. 95, 100, 101

[Discovery Letter Nos. 2-4]

Plaintiff Sanas.AI, Inc. alleges that Defendant Krisp Technologies, Inc. has infringed on its accent translation patents and trade secrets, while Defendant alleges that Plaintiff has infringed on its noise cancellation patent. (Discovery Letter at 1, Dkt. No. 95.) Pending before the Court is the parties' discovery letter concerning whether Plaintiff's expert, Dr. Ricardo Gutierrez-Osuna, should be given access to Defendant's accent conversion highly confidential code and technical materials.[1] (*Id.* at 2.) On May 8, 2026, the parties unilaterally filed "supplemental" discovery letters. (Dkt. Nos. 100, 101.)[2] Based on the parties' filings, the relevant legal authorities, and the arguments made at the May 7, 2026 hearing, the Court finds that these materials shall not be disclosed to Dr. Gutierrez-Osuna.

In general, "a party is owed some degree of deference in retaining and preparing an expert

---

[1] The footnotes in the discovery letter do not comply with Civil Local Rule 3-4(c)(2), which requires that all text, including footnotes, be in 12-point type or larger. Going forward, failure to comply with Civil Local Rule 3-4(c)(2) may result in the Court disregarding all non-compliant footnotes.

[2] Given that neither side sought leave to file their "supplemental" discovery letters and that the Court does not permit unilateral discovery submissions, the Court would be well within its authority to terminate both letters. Given the gravity of this issue, however, the Court exercises its discretion to address both letters. Going forward, the Court **will** terminate improper submissions.

United States District Court
Northern District of California

with the relevant industry experience and availability." *GPNE Corp. v. Apple Inc.*, No. 5:12-cv-2885-LHK (PSG), 2014 WL 1027948, at *1 (N.D. Cal. Mar. 13, 2014) (internal quotation omitted). In particular circumstances, however, "that interest must be balanced against an increased risk of improper use or disclosure borne by the producing party," such as when there is a risk of competitive harm from disclosure. *Id.* Courts have typically found such a risk where the expert has worked with a competitor. *See Symantec Corp. v. Acronis Corp.*, No. 11-5310-EMC (JSC), 2012 WL 3582974, at *2 (N.D. Cal. Aug. 20, 2012) (finding a substantial risk where the expert actively consulted in the area of virtualization and had worked with one of the defendant's competitors on a podcast about virtualization); *GPNE Corp.*, 2014 WL 1027948, at *2 (finding a substantial risk where the expert had worked for several of the defendant's competitors and there was no representation or agreement that he would not do so again in the near future). Additionally, in *Andersen v. Stability AI Ltd.*, the district court found a risk of competitive harm even where the expert did not work for a direct competitor but was an academic researcher whose work was "in functional competition with Defendants as he develops tools that attack Defendants' generative AI models." No. 23-CV-00201-WHO (LJC), 2025 WL 1927796, at *2 (N.D. Cal. July 14, 2025).

The Court finds that in this case, there is a concrete risk of competitive harm. Dr. Gutierrez-Osuna is a computer science and speech processing professor at Texas A&M University, who publishes and obtains patents in the field of accent conversion technology. (Discovery Letter at 5.) Further, Texas A&M University has licensed software technology (a foreign accent conversion toolkit), on which Dr. Gutierrez-Osuna is one of the named inventors, to Plaintiff. (*Id.* at 1.) Dr. Gutierrez-Osuna is also currently a principal investigator on behalf of Texas A&M University on a subcontract for Honeywell regarding speech anonymization technology being developed for the government. (*Id.* at 1, 3.) That technology, in turn, involves adjusting attributes such as age, gender, and dialect, which Defendant asserts parallels the type of voice modification performed by its accent conversion technology. (*Id.* at 5.) For example, Defendant explained at the hearing that Honeywell itself has anticipated additional uses for the speech anonymization technology, including reducing language barriers caused by accents in the

2

context of air traffic control.

In short, while Dr. Gutierrez-Osuna does not appear to have worked directly with any of Defendant's competitors, there is a significant risk that Dr. Gutierrez-Osuna's work can be licensed to Defendant's competitors by his employer or Honeywell.  Indeed, Dr. Gutierrez-Osuna's accent conversion therapy was licensed by his employer to Plaintiff, who appears to be one of Defendant's competitors.[3]  While the Court in no way suggests that Dr. Gutierrez-Osuna would intentionally misuse information obtained during this litigation, courts have recognized that "even if [an expert] were to make his best efforts to cabin the information off in his mind, the highly confidential information may become intertwined with his other knowledge such that it may be disclosed in the course of his future work." *Andersen*, 2025 WL 1927796, at *2 (internal quotations omitted).  This risk of misuse is further highlighted by the apparent overlap between his field of expertise and Defendant's work, as demonstrated by Dr. Gutierrez-Osuna's work on the speech anonymization technology subcontract. *See Symantec*, 2012 WL 3582974, at *3 ("there is a tangible risk that Mr. Haletky will not be able to separate the highly confidential information he gleans from reviewing Defendant's source code with his consulting and publication work in that same technical field").

In response, Plaintiff argues that with respect to the license, Dr. Gutierrez-Osuna received less than $4,000 in royalties for the license pursuant to the university's compensation policies. (Discovery Letter at 3.)  The amount of Dr. Gutierrez-Osuna's compensation, however, is not at issue.  Even if his direct compensation for the specific license is not high, that does not change that he has and can continue to invent technology for his employer, who in turn can freely license that technology to Defendant's competitors.  Alternatively, Plaintiff contends that Dr. Gutierrez-Osuna's work on the speech anonymization technology subcontract is not for a competitor because the subcontract is for Honeywell, a defense contractor, while Defendant's primary customer base

---

[3] The Court acknowledges that Plaintiff explained at the hearing that the license was only obtained in order to ensure freedom to operate, but the fact remains that this license demonstrates that Dr. Gutierrez-Osuna's technological creations have been licensed by his employer to Defendant's competitors.

3

is call centers. (*Id.*)  While the Court agrees that Honeywell and Defendant are not direct competitors, Dr. Gutierrez-Osuna could still develop other technologies or patents that can then be licensed by his employer to Defendant's competitors.  Moreover, as Defendant pointed out at the hearing, the researchers on the Honeywell project have openly stated that they hope "these open-source voice-changer tools will have positive benefits far beyond the intended initial use cases." (*See* Discovery Letter at 5 n.2.)   Thus, the Honeywell subcontract does not appear to be limited to government use, but would have benefits in any area where an accent could get in the way of voice clarity.  This highlights the concrete risk that if Defendant's confidential information was to become "intertwined" with Dr. Gutierrez-Osuna's knowledge such that it could accidentally be used in the course of his work, such work could ultimately become available to Defendant's competitors.  *Andersen*, 2025 WL 1927796, at *2.

The Court notes that, at the hearing, Plaintiff repeatedly argued that Dr. Gutierrez-Osuna is not a competitive decisionmaker.  This is not dispositive.  Numerous courts have found a concrete risk of competitive harm even where the proposed expert was not a competitive decisionmaker. *E.g.*, *Symantec Corp.*, 2012 WL 3582974, at *2 (concerning a proposed expert who was a consultant and had worked with the defendant's competitor on a podcast); *GPNE Corp.*, 2014 WL 1027948, at *2 (concerning a proposed expert who was an active consultant, including for the defendant's competitors); *Andersen*, 2025 WL 1927796, at *2 (concerning a proposed expert who was "an academic researcher rather than part of a company that directly competes 'for the same dollars' as Defendants"). Alternatively, in its supplemental letter, Plaintiff argues that the protective order in this case includes a patent prosecution bar, thus preventing Dr. Gutierrez-Osuna from pursuing a patent related to accent conversion or accent translation.  (Dkt. No. 100 at 1.)  Defendant, however, points out that a prosecution bar would not prohibit Dr. Gutierrez-Osuna from inadvertently using its information in overlapping technical work separate from patent prosecution, such as architecture decisions, optimization approaches, research directions, or technical development efforts.  (Dkt. No. 101 at 1.)  In other words, while the patent prosecution bar prevents one avenue of harm to Defendant, it does not account for all avenues of harm.   Thus, the Court concludes that Defendant has met its burden of demonstrating that disclosing their

highly confidential accent conversion materials to Dr. Gutierrez-Osuna poses a concrete risk of competitive harm.

Once a showing is made that a "proposed expert's ongoing work in the field created a substantial risk of misuse," that expert's access to the confidential information is only permitted if the expert possesses "unique knowledge that c[annot] be found in another expert." *GPNE Corp.*, 2014 WL 1027948, at *1; *Symantec*, 2012 WL 3582974, at *3. Here, Plaintiff argues that an expert in this case will need expertise in accent translation and machine learning. (Discovery Letter at 3.) Defendant responds that Plaintiff is unduly narrowing the field by requiring expertise in accent translation, as opposed to speech processing in general. (*Id.* at 5.) The Court agrees that Plaintiff appears to be taking an overly narrow view, and that Plaintiff fails to adequately explain why accent translation is so unique and distinct that an expertise in speech processing would not be sufficient. *See Univ. of Va. Patent Found. v. GE*, Civil Action No. 3:14cv51, 2015 U.S. Dist. LEXIS 157137, at *16 (W.D. Va. Nov. 20, 2015) ("A party's unnecessarily narrow definition of an expert's field may provide a false impression that the expert is unique."). Further, Defendant pointed out that while this is a newly commercialized field, it was not a new field, and that Defendant itself has been able to identify three experts with similar qualifications. For example, one of these experts, who Plaintiff complains is only experienced in speech recognition, has participated in a number of presentations concerning accented speech and has projects including pronunciation analysis. (*See* Discovery Letter at 5 n.3.) Moreover, while Plaintiff argued the complexities of this field at the hearing, Plaintiff ultimately conceded that Dr. Gutierrez-Osuna was not "totally unique," instead falling back to its argument that a party has a right to choose its expert. While the Court acknowledges that a ruling prohibiting Plaintiff from using its chosen expert is a serious one, ultimately, the Court finds that Plaintiff has failed to demonstrate that Dr. Gutierrez-Osuna has unique knowledge that cannot be found in another expert.

Accordingly, the Court finds that Defendant's accent conversion highly confidential code and technical materials cannot be shared with Dr. Gutierrez-Osuna.

///

///

5

This order disposes of Dkt. Nos. 95, 100, and 101.

IT IS SO ORDERED.

Dated: May 14, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

6